# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| LOUIS RAY, individually and on behalf of all others similarly situated,<br><br>                      Plaintiff,<br><br>    v.<br><br>GENERAL MOTORS, LLC,<br><br>                      Defendant. | Civil Action No.<br><br>Hon. |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

# TABLE OF CONTENTS

I.   INTRODUCTION ........................................................................................1

II.  JURISDICTION & VENUE ........................................................................5

III. PARTIES .................................................................................................6

IV.  FACTUAL ALLEGATIONS ......................................................................8

   A.  The GM 8L45 and GM 8L90 Eight-Speed Automatic Transmissions ...........8

   B.  The Defective Transmissions Are Covered Under GM's Warranty ..............11

   C.  The GM 8L90 and 8L45 Transmissions are Defective ..................................14

   D.  GM's Longstanding Knowledge of the Transmission Defect........................14

      a.   NHTSA Complaints ....................................................................................15

      b.   Customer Complaints Published in Various Other Online Fora.................20

      c.   Trade Publications .......................................................................................24

   E.  Internal Publications and Bulletins Confirm Defendant's Knowledge of the
       Transmission Defect as Early as 2015.............................................................25

   F.  GM Failed and Continues to Fail to Inform Consumers of the Transmission
       Defect or Provide a Remedy within a Reasonable Time.................................31

V.   CLASS ACTION ALLEGATIONS................................................................32

VI.  TOLLING OF STATUTES OF LIMITATIONS...........................................36

VII. CAUSES OF ACTION.................................................................................37

VIII. PRAYER FOR RELIEF .............................................................................53

i

The allegations herein are based on personal knowledge as to Plaintiff's own conduct and are made on information and belief as to all other matters based on an investigation by counsel:[1]

## I.   INTRODUCTION

1.     Motor vehicles rely on a transmission to translate the power generated by the engine into usable and controllable rotation of the vehicle's wheels by shifting through a series of gear ratios.  When a transmission functions properly, a vehicle behaves as expected, allowing the driver to predictably and reliably control the speed and acceleration of the vehicle via manipulation of the gas pedal.  Additionally, a properly functioning transmission allows the vehicle to drive smoothly when shifting. When a transmission does not function properly, drivers and passengers are subjected to dangerous conditions, including a vehicle that hesitates, shakes, shudders, bucks, kicks, jerks, or harshly engages or shifts.

2.     Between 2015 and 2019, millions of cars, body-on-frame trucks, and unibody sport utility vehicles ("SUVs") designed, manufactured, marketed, distributed, warranted, and sold by General Motors, LLC ("GM" or "Defendant") were assembled with either of two GM-manufactured eight-speed transmissions:

---

[1] Counsel's investigation includes an analysis of publicly available information, including investigations by the National Highway Traffic Safety Administration ("NHTSA"), consumer complaints to NHTSA, and additional analysis.  Plaintiffs believe that a reasonable opportunity for discovery will provide further support for the claims alleged herein.

model 8L90 or 8L45 (the "Defective Transmission(s)").  Neither of the Defective Transmissions functions properly or safely.

3.      As further explained below, the Class Vehicles have a common defect. They were sold with a Defective Transmission that, among other things, hesitates, shakes, shudder, bucks, kicks, jerks, harshly engages, or shifts when the automatic transmission changes gears.  These issues (collectively the "Transmission Defect") occur whether a Class Vehicle is accelerating or decelerating, while staying in a single gear, or when not actively shifting gears.

4.      The Transmission Defect can cause unsafe conditions, including but not limited to: suddenly and violently lurching forward, loss of forward propulsion, and unpredictable and unreliable acceleration.  These conditions present a safety risk by severely affecting the driver's ability to predict and control the vehicle's speed, acceleration, and deceleration.  Furthermore, the Transmission Defect is related to internal issues within the transmission and/or torque converter[2] causing friction surfaces, hydraulic systems, and gears to not function properly, and results in the circulation of metal shavings through the transmission.  This friction causes damage to the transmission and/or torque converter, eventually leading to failure requiring the replacement of various components such as the torque converter, valve body, and/or

---

[2] A torque converter is a fluid coupling which connects the engine's output shaft to the transmission.  A torque converter serves a similar purpose as that of a mechanical clutch in a vehicle with a manual transmission.

the entire transmission.

5.     Despite knowing since prior to 2015 that its vehicles were equipped with Defective Transmissions that contain a defect in design, manufacturing, materials and/or workmanship that causes unsafe conditions while driving, GM failed to warn consumers about the Transmission Defect through advertisements, on its website, and/or through communications from its authorized dealers before or at the time of purchase.  Despite many opportunities and methods to do so, GM failed to disclose the Transmission Defect.  Had GM properly disclosed the Transmission Defect, Plaintiffs and members of the Classes would not have purchased or leased the Class Vehicles or would not have purchased or leased them at the prices they paid.

6.     GM marketed and advertised these vehicles as safe and reliable, all the while knowing that the Transmission Defect was inherent in each of the Class Vehicles at the time of sale or lease and with knowledge that the Class Vehicles are unfit for their ordinary use.  GM has unreasonably delayed implementing a fix to this known Transmission Defect.

7.     The Class Vehicles with the Transmission Defect present an unreasonable safety risk to Plaintiff, members of the Classes and the public.

8.     Plaintiff Louis Ray ("Plaintiff") brings this class action against GM, individually and on behalf of all persons in the United States who purchased, leased, or own a Chevrolet, GMC, or Cadillac vehicle equipped with a model 8L90 or 8L45

transmission, asserting claims for declaratory judgment, violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, unjust enrichment, fraud, breach of express and implied warranties, and violation of the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.903, *et seq.*

9.     Plaintiff seeks to remedy the injuries suffered as a result of the Transmission Defect and to require GM to compensate Plaintiff and members of the Classes (defined below) for damages, including, *inter alia*, actual damages, deprivation of the benefit of their bargain, and the loss of value of the Class Vehicles resulting from the defect.

10.     Plaintiff and members of the Classes seek damages and equitable relief for the conduct of GM related to the Transmission Defect as alleged in this Complaint. Specifically, Plaintiff and the Classes seek, *inter alia*, an order enjoining GM from continuing the unlawful conduct alleged herein, actual and statutory damages, damages for diminished value of the Class Vehicles and/or deprivation of the benefit of the bargain made at the time of sale or lease, compensation for time and monies spent on maintenance as a result of any purported fix or to diagnose a cause of the Transmission Defect, restitution for purchase of extended warranties that will go unused, restitution in the form of reimbursement for all monies paid to purchase or lease the Class Vehicles, and punitive damages for GM's knowing fraud that put drivers in Michigan and nationwide at risk.

## II.    JURISDICTION & VENUE

11.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2). The matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000 and is a class action in which there are more than 100 members of the Classes, members of the Classes (as defined below) are citizens of states different from Defendant and greater than two-thirds of the members of the Classes reside in states other than the state in which Defendant is a citizen. This Court also has jurisdiction over supplemental state law claims pursuant to 28 U.S.C. § 1367 and jurisdiction over the Magnuson-Moss Warranty Act claim by virtue of diversity jurisdiction being exercised under the Class Action Fairness Act ("CAFA").

12.    Venue properly lies in this District pursuant to 28 U.S.C. § 1391(a), (b) and (c) because: Defendant maintains operational facilities in this District; a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District; Defendant conducts a substantial amount of business in this District; and Defendant is headquartered in this District. Accordingly, Defendant has sufficient contacts with this District to subject Defendant to personal jurisdiction in the District and venue is proper.

13.    This Court has personal jurisdiction over Defendant because it has conducted substantial business in this District, is properly at home in this District, and intentionally and purposefully placed Class Vehicles into the stream of commerce

within this District and throughout Michigan and the United States.

## III.   PARTIES

14.   Plaintiff Louis Ray is a citizen of the State of Michigan and resides in Gross Pointe Woods, Michigan.  On or about August 14, 2017, Plaintiff purchased a GM-manufactured 2015 Cadillac Escalade Utility 4D Luxury V8, which is one of the Class Vehicles, for personal, family or household use.  Plaintiff purchased his Class Vehicle from Vyletel Buick GMC, an authorized GM dealer in Sterling Heights, Michigan.  Plaintiff purchased the car because of its reputation for passenger safety, reliability, and utility, consistent with his review of GM's advertising.

15.   Unbeknownst to Plaintiff at the time the vehicle was purchased, the vehicle was equipped with a transmission containing the Transmission Defect.  As a result, Plaintiff has experienced hesitation, shaking, kicking, and lurching when driving his vehicle.  On one occasion, Plaintiff was unable to drive his Class Vehicle in reverse after starting the vehicle.  He has taken his vehicle to his dealership for repair, but the dealership has only performed a computer reset, which has not remedied the issues.  Accordingly, to date, Defendant has not provided Plaintiff with a remedy for his vehicle's Transmission Defect.

16.   Had GM disclosed the Transmission Defect before Plaintiff purchased his vehicle, Plaintiff would not have purchased his Class Vehicle.  The defect in his vehicle has *inter alia*, caused Plaintiff out-of-pocket losses, deprived Plaintiff of the

benefit of the bargain made at the time of purchase, caused a loss of warranty value, and significantly diminished the value of the Class Vehicle. GM knew about the Transmission Defect but did not disclose this defect to Plaintiff, so Plaintiff purchased the vehicle relying upon the reasonable, but mistaken, belief that his Class Vehicle was safe to operate as designed and manufactured.

17. Defendant GM is a limited liability company organized and existing under the laws of the State of Delaware, and is headquartered at 300 Renaissance Center, Detroit, Michigan, 48265.

18. GM is the largest manufacturer of automobiles in the United States, selling approximately 8.4 million vehicles globally in 2018, and earning $147 billion in revenue.[3] GM also has thousands of official dealerships across the United States.

19. At all times relevant to this action, Defendant manufactured, distributed, sold, leased, and warranted the Class Vehicles under the Chevrolet (Chevy), Cadillac, and GMC brand names throughout the United States. Defendant and/or its agents designed, manufactured, and/or installed the Defective Transmissions in the Class Vehicles. Defendant and/or its agents also developed and disseminated the owner's manuals, warranty booklets, maintenance schedules, advertisements, and other promotional materials relating to the Class Vehicles.

---

[3] Exhibit A, Press Release, General Motors, *GM Reports Another Strong Year of Earnings*, https://media.gm.com/content/dam/Media/gmcom/investor/2019/feb/GM -Q4-2018-Press-Release-PDF.pdf. (last visited June 12, 2019).

20.     On information and belief, at all times relevant to this action, Defendant made decisions related to advertisement, marketing, sales, warranties, and recalls of vehicles under the Chevrolet (Chevy), Cadillac, and GMC brand names from their Detroit, Michigan headquarters, which is located within this District.

## IV.   FACTUAL ALLEGATIONS

### A.   The GM 8L45 and GM 8L90 Eight-Speed Automatic Transmissions

21.     In or around late 2014, GM began advertising a new feature for certain models of vehicles—the eight-speed automatic transmission.   Two models of eight-speed automatic were introduced: the GM 8L90 and the GM 8L45 (the "Defective Transmission(s)").   Prior to this, most of GM's vehicles with automatic transmissions were equipped with four or six-speed transmissions.

22.     A vehicle's transmission is an essential part of a vehicle's drivetrain. The purpose of the transmission is to ensure that the proper amount of power goes to a vehicle's wheels to drive at a given speed.   The transmission also controls the engine's power distribution and multiplies the torque of the engine across the gears, each of which corresponds to a different range of speed.   As an engine generates torque, the transmission uses different "gear ratios" (the relationship between gears) that regulate the rotational energy in order to spin the wheels.   When engaging gears or when stopping, there needs to be a mechanism that disconnects the transmission from the engine so that the engine can continue to spin.   Otherwise, the engine would

die every time the vehicle stops, or a driver would be unable to control the acceleration.  In a manual transmission, this is done by the driver engaging the clutch with every gear change.

23.    Automatic transmissions, like the 8-speed transmissions at issue in this case, automatically shift the gear ratio as the vehicle moves without input from the driver, and allow the vehicle to accelerate, decelerate, and remain at constant speeds depending on the throttle input from the driver.  Without a properly functioning transmission, a vehicle cannot efficiently convert a vehicle's power into both forward and backward movement.

24.    A torque converter – used in the Defective Transmissions at issue – is a fluid-filled coupler between the engine and transmission.  The torque converter allows the engine to spin somewhat independently of the transmission by pressurizing automatic transmission fluid, which supplies the force necessary to shift transmission gears.

25.    When GM announced that it would begin manufacturing and installing eight-speed transmissions in GM-branded vehicles, GM advertised that these transmissions would be able to distribute power more efficiently than their six-speed predecessors.

26.    GM further marketed to consumers, including through its website and by way of multiple press releases, that the eight-speed transmissions' reduced weight,

when, combined with purportedly-more-efficient power distribution, promised to deliver better fuel mileage and enhanced performance.[4]  GM viewed these as selling points to many consumers.

27.    GM advertised that the 8L90 transmission had the following features:

- Increased efficiency, up to five percent, over the previous 6-speed model

- A lighter design that fits in the same physical space as a 6-speed

- Integral, die-cast aluminum bell housing for reduced NVH

- Rated turbine torque capacity of 1000 Nm (738 lb·ft)

- VFS control components to monitor clutch pressures with optimum accuracy, producing fast and precise shifts

- Five clutch design that uses three at a time, leaving only two open clutches in each gear state

- A microcontroller that executes instructions at a rate of 120 million per second and wide-open-throttle upshifts up to eight-hundredths of a second quicker than those of the dual-clutch transmission offered in the Porsche 911.[5]

28.    GM offered a remanufactured version of the 8L45 and 8L90 in 2018, advertising the transmissions had or were:

---

[4] *See, e.g.*, Exhibit B, *Shifting Into Higher Gear: Next-generation 8-speed Automatic Transmissions Rolling Out More Extensively with 2015 GM Model Year*, GENERAL MOTORS (Mar. 9, 2015), https://gmserviceinsights.com/2015/03/shifting-into-higher-gear-next-generation-8-speed-automatic-transmissions-rolling-out-more-extensively-with-2015-gm-model-year/.

[5] Exhibit C, *GM's 8L90 transmission makes news again as company's first 8-speed reman*, GENERAL MOTORS (July 27, 2017), https://gmserviceinsights.com/2017/07/gms-8l90-transmission-makes-news-again-as-companys-first-8-speed-reman/.

- Efficient clutch-to-clutch shifting;

- Plug and play design engineered for easy installation;

- Dynamometer tested;

- The latest GM engineering updates and design enhancements;

- All sub-components tested before final assembly; and

- Made to fit to exact vehicle specifications.[6]

29.    The Class Vehicles include hundreds of thousands of cars, trucks, and SUVs equipped with the 8L90 or 8L45 transmission, including: the 2015-2019 Chevrolet Silverado; the 2017-2019 Chevrolet Colorado; the 2015-2019 Chevrolet Corvette; the 2016-2019 Chevrolet Camaro; the 2015-2019 Cadillac Escalade and Escalade ESV; the 2016-2019 Cadillac ATS, ATS-V, CTS, CT6, and CTS-V; the 2015-2019 GMC Sierra, Yukon, and Yukon XL; the 2015-2019 Yukon Denali and Denali XL; and the 2017-2019 GMC Canyon ("Class Vehicles").[7]

**B.    The Defective Transmissions Are Covered Under GM's Warranty**

30.    Each Class Vehicle, when purchased new, was protected by both GM's New Vehicle Limited Warranty ("NVLW") and Powertrain Component Warranty ("PCW")

31.    Class Vehicles all come with a warranty booklet, explaining the warranty

---

[6] Exhibit D, *Rev Up for Remans – Remanufactured GM 8-Speeds to be Available in 2018*, GENERAL MOTORS (Nov. 1, 2018), https://gmserviceinsights.com/2018/11/rev -up-for-remans-remanufactured-gm-8-speeds-to-be-available-in-2018/.

[7]  Plaintiff reserves the right to amend vehicle models after conducting discovery.

terms.  Sample excerpts include:

### New Vehicle Limited Warranty

### Bumper-to-Bumper (Includes Tires).
Coverage is for the first 3 years or 36,000 miles, whichever comes first.

### What Is Covered
### Warranty Applies
This warranty is for [GM] vehicles registered in the United States and normally operated in the United States, and is provided to the original and any subsequent owners of the vehicle during the warranty period.

### Repairs Covered
The warranty covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new, remanufactured, or refurbished parts.

### No Charge
Warranty repairs, including towing, parts, and labor, will be made at no charge.

### Obtaining Repairs
To obtain warranty repairs, take the vehicle to a Chevrolet dealer facility within the warranty period and request the needed repairs. Reasonable time must be allowed for the dealer to perform necessary repairs.

### Warranty Period
The warranty period for all coverages begins on the date the vehicle is first delivered or put in use and ends at the expiration of the coverage period.

### Bumper-to-Bumper Coverage
The complete vehicle is covered for 3 years or 36,000 miles, whichever comes first, except for other coverages listed here

under "What Is Covered" and those items listed under "What Is Not Covered" later in this section.

\*\*\*

**Powertrain Component Warranty Coverage.**
Coverage is provided for 5 years or 60,000 miles, whichever comes first.

\*\*\*

**Transmission/Transaxle Coverage includes:**
All internally lubricated parts, case, torque converter, mounts, seals, and gaskets as well as any electrical components internal to the transmission/transaxle. Also covered are any actuators directly connected to the transmission (slave cylinder, etc.). *Exclusions:* Excluded from the powertrain coverage are transmission cooling lines, hoses, radiator, sensors, wiring, and electrical connectors. Also excluded are the clutch and pressure plate as well as any Transmission Control Module and/or module programming.

\*\*\*

**Other Terms:**
This warranty gives you specific legal rights and you may also have other rights which vary from state to state. GM does not authorize any person to create for it any other obligation or liability in connection with these vehicles. **Any implied warranty of merchantability or fitness for a particular purpose applicable to this vehicle is limited in duration to the duration of this written warranty. Performance of repairs and needed adjustments is the exclusive remedy under this written warranty or any implied warranty. GM shall not be liable for incidental or consequential damages, such as, but not limited to, lost wages or vehicle rental expenses, resulting from breach of this written warranty.**[8]

---

[8] *See, e.g.*, Exhibit E, *2018 Limited Warranty and Owner Assistance Information*, CHEVROLET, at 2, 4, 5, 13, https://www.chevrolet.com/content/dam/chevrolet

13

**C.     The GM 8L90 and 8L45 Transmissions are Defective**

32.     The Class Vehicles were sold with Defective Transmissions which, among other things, cause the affected vehicles to hesitate, slip, buck, kick, jerk, engage harshly, and suffer premature internal wear.  As a result, those driving Class Vehicles experience sudden acceleration, delays while downshifting, delayed acceleration, and difficulty stopping the vehicle.  As a result of the Transmission Defect, Class Vehicles often suffer complete transmission failure, requiring the replacement of the transmission.

33.     This Transmission Defect not only makes the driving experience uncomfortable, but it also endangers the drivers and passengers of Class Vehicles, and other drivers and pedestrians as well.

**D.     GM's Longstanding Knowledge of the Transmission Defect**

34.     Defendant fraudulently, intentionally, negligently, and/or recklessly omitted and concealed form Plaintiffs and members of the Classes the Transmission Defect even though Defendant knew or should have known of the Transmission Defect in the Class Vehicles since at least 2015.

35.     Knowledge and information regarding the Transmission Defect was in

---

/na/us/english/index/owners/warranty/02-pdfs/2018-chevrolet-limited-warranty-and-owner-assistance-information.pdf (last visited June 12, 2019).

the superior and exclusive possession of Defendant, and was never disclosed to Plaintiff or members of the Classes.  In addition to its own internal pre-production and ongoing testing and analyses, GM was additionally put on notice of the Transmission Defect through customer complaints made to its network of exclusive dealerships, aired in various fora online, and reported to the National Highway Traffic Safety Administration ("NHTSA"), including but not limited to extensive complaints filed with the  NHTSA website.

36.    Defendant's exclusive and superior knowledge of the Transmission Defect notwithstanding, Defendant never disclosed the defect to consumers, including Plaintiff and members of the Classes at the time of the purchase or lease of their Class Vehicles, or at any time thereafter, and continued to manufacture and sell the Class Vehicles equipped with Transmission Defect throughout the Class Period.

### a.    NHTSA Complaints

37.    Federal law requires GM to monitor defects which can cause a safety issue and report them within five days.  Upon information and belief, GM regularly monitors NHTSA complaints in order to meet its reporting requirements under federal law and was provided knowledge of the defect through these complaints, *inter alia*.

38.    NHTSA has received hundreds of reports of the Transmission Defect. The following complaints are but a few examples of the many complaints concerning the Transmission Defect.  In addition to GM being on notice of the complaints

themselves, these complaints also reveal that GM, through its network of dealers and repair technicians, was made aware of the Transmission Defect and refused to diagnose and/or adequately repair it, despite Class Vehicles being under warranty:

1.    **2017 Chevrolet Silverado**[9]

**Complaint Filed:** October 3, 2018
**NHTSA ID Number:** 11133142
**Incident Date** May 1, 2017
**Summary of Complaint**
WHEN DRIVING VEH SHIFTS HARD CAUSING A JUMP OR UNEXPECTED ACCELERATION. BROUHT IT TO HUNTINGTON CHEVROLET THEY STATED IT WAS NORMAL. I DO NOT FEEL SAFE IN THIS VEHICLE.

**Complaint Filed:** July 20, 2018
**NHTSA ID Number:** 11112780
**Incident Date** May 7, 2018
**Summary of Complaint**
8 SPEED TRANSMISSION CLUNKS WHEN SHIFTING INTO 2 GEAR AND AT TIMES FEELS LIKE YOU GOT REAR ENDED. WHEN IT DOWN SHIFTS INTO THE LOWER GEARS IT'S ALSO CLUNKS AND IS NOT SMOOTH. THIS IS HAPPENING WHEN GOING AT SLOW SPEEDS AND IS WORSE AFTER A COLD START . THE VEHICLE SHIFTS FINE AT HWY SPEEDS. I HAVE ALREADY BROUGHT IT TO THE DEALERSHIP TWICE AND PROBLEM IS STILL THERE. TALKING TO OTHER PEOPLE WITH GM 8 SPEED TRANSMISSION AND THEY ARE HAVING THE SAME ISSUE. 8 SPEED TRANSMISSION NEEDS RECALL. POSSIBLY TORQUE CONVERTER.

**Complaint Filed:** May 9, 2018
**NHTSA ID Number:** 11092766
**Incident Date** May 1, 2018
**Summary of Complaint**

---

[9] Exhibit F, *2017 Chevrolet Silverado 1500*, NHTSA, https://www.nhtsa.gov/vehicle/2017/CHEVROLET/SILVERADO%2525201500/PU%25252FRC/4WD (last visited June 12, 2019).

TRANSMISSION ABRUPTLY SHIFTING. FEEL LIKE THE TRUCK IS BEING HIT BY ANOTHER VEHICLE. I DON'T KNOW WHEN IT'S GONNA DO IT BUT WHEN IT DOES, ITS SCARY. THE OTHER DAY WHILE TRYING TO BACK UP INTO MY DRIVE WAY, THE WOULD NOT MOVE WHEN I PUSHED ON THE PEDAL. THEN ON IT'S OWN, THE TRUCK BURNED RUBBER BACKWARDS WHEN I TOOK MY FOOT OFF OF THE GAS PEDAL. I ALMOST DROVE INTO MY GARAGE! THIS TRUCK IS NOT SAFE AND NEEDS TO BE REMOVED FROM SERVICE! THIS IS AN ONGOING PROBLEM THAT YOU NEVER KNOW WHEN IT'S GOING TO HAPPEN DURING YOU DRIVE.

**Complaint Filed:** October 24, 2017
**NHTSA ID Number:** 11036004
**Incident Date** March 1, 2017
**Summary of Complaint**
TRANSMISSION ON MY NEW 2016 Z71 LT 4X4 JUMPS INTO LOW GEAR WHEN SLOWING DOWN. I TOOK IT TO THE DEALERSHIP MULTIPLE TIMES, BUT KEEP GETTING TOLD IT SHIFTS FINE. I TOOK IT AGAIN AND HAD A MANAGER DRIVE THE TRUCK WITH ME INSIDE AND AGREED THE TRANSMISSION WAS NOT GETTIN INTO GEAR IN A NORMAL WAY. TOON IT BACK TO GET IT FIXED AND WAS TOLD TRANSMISSION IS FINE. I NEED THIS FIXED OR I WILL BE RETURNING HE TRUCK AS A LEMON TITLE.

**Complaint Filed:** April 5, 2017
**NHTSA ID Number:** 10970796
**Incident Date** March 15, 2017
**Summary of Complaint**
TL* THE CONTACT OWNS A 2017 CHEVROLET SILVERADO 1500. WHILE DRIVING 45 MPH, THE TRANSMISSION FAILED TO SHIFT PROPERLY AND MADE A CLUNKING SOUND. THE FAILURE RECURRED MULTIPLE TIMES. THE VEHICLE WAS TAKEN TO A DEALER WHERE IT WAS DIAGNOSED THAT THE TRANSMISSION FAILED AND NEEDED TO BE REPROGRAMMED. THE VEHICLE WAS REPAIRED, BUT THE FAILURE RECURRED. THE MANUFACTURER WAS MADE AWARE OF THE ISSUE. THE APPROXIMATE FAILURE MILEAGE WAS 30.

## 2.    2016 GMC Sierra[10]

**Complaint Filed:** November 6, 2018
**NHTSA ID Number:** 11149755
**Incident Date**: August 1, 2018
**Summary of Complaint:**
TL* THE CONTACT OWNS A 2016 GMC SIERRA 1500. WHILE DRIVING 65 MPH IN STOP AND GO TRAFFIC, THE CONTACT DETECTED A SHUTTER AND HEARD AN ABNORMAL NOISE WHEN SHIFTING GEARS. THE VEHICLE WAS TAKEN TO MARTY'S BUICK GMC (5 KINGSTON COLLECTION WAY, KINGSTON, MA 02364, (781) 948-9098) WHERE THE TRANSMISSION WAS REPROGRAMMED AND FLUSHED. THE VEHICLE WAS THEN TAKEN TO BEST CHEVROLET (128 DERBY ST, HINGHAM, MA 02043, 866-208-7873) WHERE THE CONTACT WAS INFORMED THAT THE CAUSE OF THE FAILURE COULD NOT BE DETERMINED. THE VEHICLE WAS NOT REPAIRED. THE MANUFACTURER WAS MADE AWARE OF THE FAILURE. THE FAILURE MILEAGE WAS 96,794.

**Complaint Filed:** October 27, 2018
**NHTSA ID Number**: 11143435
**Incident Date**: October 26, 2018
**Summary of Complaint:**
TRANSMISSION SHIFTS ABRUPTLY AND TORQUE CONVERTER CAUSES SHUDDER AT HIGHWAY SPEEDS. TRUCK HAS BEEN SERVICED TWICE FOR THE SAME ISSUE BY DEALER AND DEALER RECENTLY TOLD ME PROBLEM IS UNRESOLVABLE.

**Complaint Filed:** September 21, 2018
**NHTSA ID Number:** 11130687
**Incident Date:** September 21, 2018
**Summary of Complaint:**
TRANSMISSION - WHEN DRIVING THE VEHICLE IT DOES A HARD SHIFT WHEN ACCELERATING AND DECELERATING. I HAVE TAKEN THE VEHICLE INTO THE DEALER TWICE. THEY ARE SAYING THAT IS A "STATE OF THE ART" COMPUTER THAT NEEDS

---

[10] Exhibit G, *2016 GMC Sierra 1500*, NHTSA, https://www.nhtsa.gov/vehicle/2016/GMC/SIERRA%2525201500/PU%25252FRC/4WD (last visited May 21, 2019).

TO BE RESET!!! I AM TAKING IT BACK IN FOR A 3RD TIME. THE CARE IS 2 YEARS OLD WITH 31K MILES.

**Complaint Filed:** August 8, 2018
**NHTSA ID Number:** 11118643
**Incident Date:** March 16, 2017
**Summary of Complaint:**
8 SPEED TRANSMISSION BUCKS, HESITATES, LURCHES FORWARD, CLUNKS, WHILE STARTUNG ACCELERATION OR COMING TO A STOP. I TRY TO KEEP A BIG GAP BETWEEN MY TRUCK AND CARS IN FRONT OF ME AT STOP SIGNS BECAUSE IT RANDOMLY LURCHES FORWARD AND I ALMOST HAVE BUMPED CARS IN FRONT OF ME. I HAVE HAD THE TRUCK INTO THE DEALER SO MANU TIMES TO FIX THE VIBRATION ISSUES AS WELL, THEY SAID 3 TIRES THAT CAME IN THE BRAND NEW TRUCK WERE DEFECTIVE SO I HAD TO REPLACE THEM ALL AND THE SHAKE IS STILL THERE, THE BALANCED, REBALANCED, ROAD FORCE BALANCE AND NOTHING WORKS. LAST TIME AT THE DEALER SAID IT IS PROBABLY THE TIRES, HE SAID DONT ROTATE THEM AGAIN AND WHEN THEY WEAR OUT HE WILL PUT ME IN A BETTER TIRE. I AM PAST MY WARRANTY SO THE DEALER SAYS ANY COSTS ARE MY RESPONSIBILITT, IF THE NHTSA COULD PLEASE STEP IN TO ASSIST US TO MAKE GM FIC THEAE VEHICLES WHICH ARE A SAFETY HAZARD.

**Complaint Filed: July 30, 2018**
**NHTSA ID Number:** 11114476
**Incident Date:** July 7, 2018
**Summary of Complaint:**
TRUCK SHIFTS REALLY HARD AND IS UNPREDICTABLE. I ALMOST DROVE THROUGH MY GARAGE DOOR THE OTHER DAY SHIFTING TO DRIVE FROM REVERSE. TRUCK WILL LUNGE FORWARD OR DELAY IN SHIFTING. THERE HAVE BEEN A FEW TIMES I'VE HAD TO SLAM ON THE BRAKES BEFORE I BACKED INTO SOMETHING. I HAVE BROUGHT IT IN 3-4 TIMES FOR THE ISSUE AND GMC WON'T REMEDY THE PROBLEM.

**Complaint Filed:** September 15, 2017
**NHTSA ID Number:** 11023589
**Incident Date** February 2, 2017

**Summary of Complaint**

THIS ISSUE STARTED A FEW MONTHS AFTER I PURCHASED THE TRUCK TOOK IT TO TWO DEALERS THEY SAY ITS NORMAL. CALLED GMC & THEY HAVE NO RECALL. WHEN DRIVING THE TRUCK & HAVE TO SLOW DOWN IN TRAFFIC THE AUTOMATIC TRANSMISSION DOWN SHIFTS & HAS A VERY NOTICABLE JERK. WILL ACTUALLY JERK THE HOLE TRUCK. PEOPLE WHO HAVE RODE WITH ME TELL ME I HAVE A TRANSMISSION PROBLEM. WHAT CAN I DO

**Complaint Filed:** May 3, 2017
**NHTSA ID Number:** 10983414
**Incident Date** May 19, 2016
**Summary of Complaint**

GM 8 SPEED TRANSMISSION IS FULL OF PROBLEM. IT CONSTANTLY HESITATES, HANG GEARS, BUCKS, AND POSES VARIOUS SAFETY CONCERNS. FOR INSTANCE IF MERGING ONTO THE HIGHWAY THE TRANSMISSION WILL HESITATE AND THE TRUCK WILL BE UNRESPONSIVE TO GAS PEDAL INPUT FOR A PERIOD OF TIME SOMETIMES UP TO 12 SECS. THIS HESITATION CAUSES A SAFETY CONCERN WHEN ATTEMPTING TO MERGE INTO TRAFFIC. GM ACKNOWLEDGES THESE CONCERNS BUT STATES THAT IT IS OPERATING AS DESIGNED BUT ARE WORKING ON SOFTWARE UPDATES TO IMPROVE TRANSMISSION PERFORMANCE. THIS HAS BEEN A CONSTANT ISSUE SINCE I PURCHASED THE TRUCK.

  **b.** **Customer Complaints Published in Various Other Online Fora**

39. Consumers have also posted complaints on many websites dedicated to discussions of GM vehicles regarding the Transmission Defect.  Upon information and belief, GM is on notice of these complaints.  The following complaints are but a few examples of the many complaints concerning the Transmission Defect:

**May 2018 customer complaint about 2016 Chevrolet Silverado:**

20

Well hate to say this, but my 2016 LTZ 6.2L 8spd tranny is at the dealer with an early diagnosis of a transmission failure. I have 34,000 on the ODO. Honestly the transmission when new shifted like butter, and then around 10,000 I started experiencing some hard shifts. Dealer reflashed. Then around 24,000 miles the symptoms re-appeared, they supposedly did the updated re-flash. Took in yesterday at 34,000 miles for routine service, and the transmission was still experiencing hard shifting AND delayed engagement in D or R AND some erratic RPM bounce. It wasn't all the time, but it was noticeable.[11]
****

**September 2017 customer complaint about 2016 GMC 1500:**
Does anybody know if the 2018 model GMC 1500 trucks have upgraded - improved the 8 speed transmissions? My 2016 has only 10000 miles and at the lower speeds it has always shifted funny and sometimes hard. Out on the highway it shifts good in the higher gears. I have to let it warm up alittle or it jumps into gear. I was going up the driveway the other day and the transmission just quit for a second and jumped back into gear. I have contacted the dealer but he says that all the 8 speed trans act that way. Wish now that I would have stayed with the 6 speed trans as my 2014 Tahoe has never given me a problem and shifts smooth.[12]

**June 2017 customer complaint about 2016 Cadillac CTS:**
My 2016 CTS now has 20K miles on it, and the transmission is totally unpredictable. At times, especially first thing in the morning, the car drives great - quick smooth shifts and excellent acceleration. However, after the car sits for a few hours, most of the time the transmission is terrible. Harsh shifts and a bogged down feeling like the car is in too high of a gear. Give it some gas, and it lurches forward to the point that the car is hard to control. Usually I will then put the car in manual mode and use the shift paddles, and this helps a bit. I recently drove 2 Malibus with the 2.0L turbo and 9 speed transmission,

---

[11] Exhibit H, Threerun, Comment to *Comprehensive 8 speed transmission thread,* SILVERADOSIERRA (May 24, 2018, 5:29 PM), https://www.silveradosierra.com /transmission/comprehensive-8-speed-transmission-thread-t488418-20.html.

[12] Exhibit I, johnnyo, Comment to *Thread: 2018 8 speed transmissions*, GM INSIDE NEWS (Sept. 12, 2017, 8:41 AM) https://www.gminsidenews.com/forums/f22/2018-8-speed-transmissions-278401/.

and these cars drove MUCH better than the CTS (with a sticker price of $20K less). I will never buy a GM vehicle with the 8 speed again...[13]

**March 2016 customer complaint about 2015 GMC Sierra SLT:**
…Have had my truck in for a re learn twice and a new torque converter. None seem to fix the issues. I have random clunking and hard shifts. Then the next time I drive it, it will be smooth. Then the following morning it will be a clunky, rough shifting pile of garbage. was thinking about trading the truck for something else... It appears there is no end in sight.[14]

**March 2016 customer complaint about 2016 GMC Sierra Denali:**
….I just bought a brand new 2016 Sierra Denali 1500 5.3 with an 8 speed transmission. It currently has just under 1500 miles and there is no clunk. However, the transmission is acting funny when I accelerate lightly from a stop. It shakes and lacks power. Feels like it shifts from 1st to 3rd or 4th gears under light acceleration. Not a very reassuring experience. Then I look at the tach, and I am only at 1700 RPM - As I said, light acceleration. Was thinking to bring this up to a dealer, but I KNOW the answer - Completely Normal or Give It More Gas. But what if I don't want to give it more gas? We will see how it behaves at 5K.[15]

**November 2016 customer complaint about 2016 GMC Sierra:**
2016 gmc sierra 6.2 8 speed. I too am big gm fan. Have had many. This truck with the exception to the power of 6.2 is a p.o.s ... transmission is garbage. Engine is very noisy and idles like it wants to stall. Rides like a hosre. All for almost 60 grand. I'm sure it's not all of them but too many where there is a

---

[13] Exhibit J, EricKline, Comment to *GM's 8L45 Cadillac Automatic Transmission: Recall, Replace, Re-tune or Deny*, CADILLAC FORUMS (June 27, 2017, 9:39 PM), https://www.cadillacforums.com/forums/cadillac-ct6-1st-generation-forum-2016/ 974121-gms-8l45-cadillac-automatic-transmission-recall-2.html.

[14] Exhibit K, JacobC1983, Comment to *My own 8 speed problems & resolution*, GM-TRUCKS (Mar. 20, 2016), https://www.gm-trucks.com/forums/topic/184117-my-own-8-speed-problems-resolution/?page=2.

[15] *Id.* at Rice33, Comment to *My own 8 speed problems & resolution*, GM-TRUCKS (Mar. 22, 2016), https://www.gm-trucks.com/forums/topic/184117-my-own-8-speed-problems-resolution/?page=2; *see also*, Exhibit L, *2016 Sierra 8-Spd Issue*, GM AUTHORITY, http://gmauthority.com/blog/topic/2016-sierra-8-spd-issue/ (last visited June 12, 2019).

big problem here. On my second converter. Many relearns. I too would rather drive my old car than this new one. Headed for lemon law. Gm has had their shot.[16]

**March 2016 customer complaint about 2015 GMC Sierra Denali:**
I too have a 2015 Denali with the 6.2/8 speed. I brought it into the dealer Monday with a check engine light and 14,140 miles. I bought it new exactly a year ago. It has had some hesitation issues, but otherwise, no major mechanical complaints. The dealer told me they had to reprogram the transmission, which would take an hour and a half "and if that didn't fix it you need a new transmission" Are you F inf kidding me?
****
My Denali, since the reflash Monday, suc+s to drive. It makes a lot of noise downshifting between 20 mph and a stop. It clunks, it hesitates, it lunges occasionally, and at 35mph it wants to shift, but it doesn't. It sputters. F Ing GREAT for 70 thousand bucks.[17]
****

**February 2016 customer complaint about 2015 Chevrolet Corvette:**
8-speed automatic transmission always shifts erratically when starting out cold (lazy shift, slow shift, etc.) and occasionally does not downshift when car comes to a stop, only to slam hard into 1st when gas pedal is pressed to resume travel. Dealer says GM claims this is "normal, " but no car I've ever owned behaves like this. Appears to be fluid starvation internally. Any fix/replacement would be costly for GM, so given their history w/faulty ignition switches, not surprised they're trying to avoid it. Transmission is definitely not normal and behavior is unpredictable + unacceptable -- especially at this price. When car is moving & transmission is in drive and trying to lazily shift gears, you temporarily lose ability to apply power, which is both dangerous and unnerving. Clearly, this transmission was put into

---

[16] Exhibit K at silver sled 16, Comment to *My own 8 speed problems & resolution*, GM-Trucks (Nov. 2, 2016), https://www.gm-trucks.com/forums/topic/184117-my-own-8-speed-problems-resolution/?page=5

[17] Exhibit M, GinoD, Comment to *GM 8 speed transmission problems, they are real-lemon law*, GM-Trucks (Mar. 31, 2016), https://www.gm-trucks.com/forums/topic/185580-gm-8-speed-transmission-problems-they-are-real-lemon-law/.

production w/inadequate testing & development. A recall is necessary to fix properly.[18]

**May 2015 customer complaint about 2015 Chevrolet Corvette:**

8 speed automatic transmission down shifts at a stop with such force it feels as you have been hit from behind by another car while coming to a stop. Transmission also will not always engage properly and will over rev and slam into gear possibly causing an accident. Transmission at times will disengage while going forward then slam into gear with great force. I was told by a GM insider that GM is aware some transmissions are defective and is working on a kit to fix the fluid starvation problem internally but has done nothing to inform owners of the potential dangers of erratic shifting that it's causing while driving. This also causes the transmission to over heat and to illuminate a warning lamp.[19]

### c.    Trade Publications

40.    GM was also aware of the Transmission Defect through trade publications.  Many articles described the issues in vehicles equipped with the GM 8L90 and 8L45 8-speed transmissions.  For example, *Motortrend.com* reported:

> And now's about the time we get to the part where I tell you why the Silverado could do with another 10 minutes in the oven, so to speak.  Simply put, test numbers aside, we were unimpressed by how the Silverado's volume 5.3-liter DFM V-8 and its eight-speed automatic performed.  We're disappointed to find that GM didn't fix the old 5.3's biggest flaws: its sloppy throttle response at low speeds and its transmission's overeagerness to get to its top gear.  The truck feels powerful enough once it's moving, but getting there is frustrating.  "The engine has power, but it's being tag-teamed by the unholy GM duo of a lazy throttle pedal and a transmission that hates to downshift," features editor Scott Evans

---

[18] Exhibit N, Comment to *NHTSA - Power Train Problems 2015 Chevrolet Corvette*, CARCOMPLAINTS (Feb. 27, 2016), https://www.carcomplaints.com/Chevrolet/Corvette/2015/drivetrain/power_train.shtml.

[19] *Id.* (May 1, 2015).

said. "Every time you want to move, you've got to get deep into the throttle before anything useful happens. The shifts aren't as smooth as the 10-speed automatic, either, so you notice every time it's forced to drop two gears to maintain speed up a hill."

The 6.2-liter V-8 and its 10-speed auto, which is only available as an option on the top-level Silverado LTZ and Silverado High Country, improves things immensely. The big V-8 has plenty of power on tap, and it sounds especially great when you bury your foot into the throttle. The 10-speed automatic is worlds better than the eight-speed, too. It feels modern and well sorted— basically the polar opposite of the eight-speed automatic. Its shifts are seamless and nearly unnoticeable, and it doesn't display the hunting behavior of the other transmission, either.[20]

### E. Internal Publications and Bulletins Confirm Defendant's Knowledge of the Transmission Defect as Early as 2015

41.     GM's knowledge of the Transmission Defect is further evidenced by its issuance of numerous preliminary information bulletins ("PIs"), technical service bulletins ("TSBs"), and other bulletins related to GM's eight-speed transmissions over the three-plus-year period from October 2015 through May 2019.

42.     In October 2015, GM issued a PI bulletin to GM service personnel regarding issues with vehicles equipped with 8L90 transmissions. This PI (No. PIP5337), entitled "Shake or Shudder on Acceleration Excessive Engine RPM Fluctuation," informed service personnel that this issue affected 2015-2016 Cadillac Escalades and Escalade ESVs; 2015-2016 Chevrolet Silverados; and 2015-2016

---

[20] Exhibit O, Christian Seabaugh, *2019 Chevrolet Silverado First Test: Pencils Down*, MOTORTREND (Sept. 14, 2018), https://www.motortrend.com/cars/chevrolet /silverado-1500/2019/2019-chevrolet-silverado-first-test-review/.

GMC Sierras, Yukons, and Yukon XLs.  These models all came equipped with a GM

8L90 transmission.  The PI stated that some customers may comment on, among other

things, "[a] shudder feeling that may be described as driving over rumble strips or

rough pavement."  GM's initial recommendation was simple: "These conditions may

be caused by an internal torque converter issue.  A revised torque converter that

addresses these conditions will be available soon."

43.     Between the initial issuance of PI No. PIP5337 in October 2015 and

October 4, 2018, PI No. PIP5337 was sequentially updated and reissued at least ten

times.[21]  Beginning with PI No. PIP5337A, the prescribed solution to the problem was

to flush the transmission twice and replace the transmission.  Each reissue of PI No.

PIP5337 made changes to the prior bulletin, such as expanding or contracting the

group of vehicles covered by the bulletin, contradicting prior bulletins, or changing

the repair processes entirely.

44.     For example, PI No. PIP5337A instructed technicians to refill the

transmission fluid with synthetic DEXRON HP fluid.  Then, in PI No. PIP5337C,

issued a month later, service personnel were instructed to instead use non-synthetic

---

[21] The updated PI bulletins were designated Nos. PIP5337A through No. PIP5337K,
collectively (excepting No. PIP5337I, which could not be found) attached hereto as
Exhibit P.  Upon information and belief, No. PIP5337A through No. PIP5337H were
issued between January 20, 2016 and November 2016.  No. PIP5337J was released
approximately one year later, on November 29, 2017.  Finally, No. PIP5337K was
issued on October 4, 2018.

fluid. However, eight months later, PI No. PIP5337G reversed course, again instructing service personnel to use synthetic DEXRON fluid. Later, in PI No. PIP5337J, technicians were instructed to use yet another transmission fluid, Mobil 1 Synethetic LV ATF HP fluid.

45. Upon information and belief, at least by the issuance of PI No. PIP5337J on November 29, 2017, GM was aware that its solutions prescribed in PI Nos. PIP5337-PIP5337J to repair the Transmission Defect were ineffective, as GM included separate instructions for any customers who returned "for a confirmed torque converter shudder *after* replacing the torque converter."[22]

46. Beginning on June 28, 2017, GM issued a separate series of TSBs, beginning with TSB No. 16-NA-014,[23] entitled "Delayed Engagement After Sitting with Engine Off." This TSB informed service personnel that drivers of vehicles equipped with 8L45 or 8L90 transmissions might complain of "Vehicle delaying into gear," "Not wanting to move," "Feeling like the transmission is slipping," and/or "Delayed engagement followed by a harsh engagement." GM stated that the condition may be caused by the torque converter draining the transmission fluid back into the transmission pan and recommended service personnel address the problem by replacing parts of the transmission and/or the transmission pan.

---

[22] Emphasis added.

[23] Attached here as Exhibit Q.

47.     A third series of bulletins was issued, beginning in or around June 2016. GM was aware that the 8L90 transmissions were experiencing premature wear, causing metal shavings and debris to build up in the transmission pans of MY 2016 Cadillac Escalades, MY 2016 Chevy Silverados/GMC Sierras, and 2016 GMC Yukons, so it issued TSB No. 16-NA-175,[24] entitled "Shake and/or Shudder During Light Throttle Acceleration, Between 48 and 104 KM/H (30 and 65 MPH) at a Steady State."   Therein, GM advised service personnel that when drivers brought in cars equipped with 8L90 transmissions and complained of experiencing "[a] shudder feeling that may be described as driving over rumble strips or rough pavement," the service personnel should flush the affected transmission with new fluid and "clean the pan/magnet if any metallic particles present and replace filter if debris is found." Upon information and belief, this TSB was updated again in November 2016.

48.     On February 27, 2017, GM updated TSB No. 16-NA-175 again,[25] this time extending the bulletin's scope to apply to all MY 2015-2017 Chevrolet, Cadillac, and GMC vehicles equipped with 8L90 (M5U, M5X) and 8L45 (M5T, M5N) transmissions.  GM reiterated that service personnel should address complaints of "[a] shudder feeling that may be described as driving over rumble strips or rough pavement," by flushing the transmission with new fluid and "clean[ing] the

---

[24] Attached hereto as Exhibit R.

[25] *Id.*

28

pan/magnet if any metallic particles present and replac[ing] transmission filter if debris is found."

49.     On December 1, 2017, GM reissued TSB No. 16-NA-175 again,[26] increasing its scope to include MY 2018 vehicles after noting that *the shudder defect was present in all "GM passenger cars and trucks" from MY2015 through 2018 that were equipped with 8L45 or 8L90 transmissions.*

50.     In the version of TSB No. 16-NA-175 issued on or about October 11, 2018 (version No. 13),[27] GM continued to recommend that service personnel flush the transmission with new fluid and clear the transmission pan of any "metallic particles" that may have built up.  GM also acknowledged that its proposed fixes *did not work*, further instructing service personnel: "[d]o NOT replace the torque converter or transmission assembly for this condition.  *Engineer reviews have proven that replacing the torque converter does not provide a long-term solution to TCC [torque converter clutch] shudder*."   The bulletin further advised, "A revised service procedure will be released in Q1 of 2019.  If the vehicle experiences a repeat shudder condition, this document should be followed again."

51.     For a period of time, GM advised its service personnel that because the eight-speed automatic transmissions were "adaptive," they needed to "learn" the

---

[26] *Id*.

[27] *Id*.

drivers' individual driving habits in order to shift smoothly and predictably, and could, at times, require reprogramming. Defendant issued several series of bulletins educating its technicians on the mechanics of programming the transmission, beginning with Bulletin No. 14-07-30-001.[28] Bulletin No. 14-07-30-001G—upon information and belief, the first iteration issued after GM determined that these transmission complaints were also related to the Transmission Defect—was revised to apply this "relearning" procedure to 2015 Chevrolet Corvettes only; for all other vehicles, technicians were directed to refer to the new TSB No. 16-NA-411.

52.    Defendant continued to issue bulletins, PIs, and TSBs throughout the Class Period, proposing myriad courses of action for its technicians to utilize in an attempt to abate the problem.[29]  However, since at least October 11, 2018—when the thirteenth version of TSB No. 16-NA-175 was issued—GM has been fully aware, and has admitted to its dealers, that it had not yet developed a permanent solution to the Transmission Defect that was affecting all passenger cars and trucks equipped with the 8L45 or 8L90 transmissions, despite having been aware of the problem since at least October 2015.

---

[28] First issued in September of 2014, and reissued (in iterations A – G) until March 2017, the iterations of Bulletin No. 14-07-30-001 (excepting No. 14-07-30-001E, which could not be found) are attached hereto as Exhibit S.

[29] Additional examples include: TSB No. 18-NA-355; TSB No. 16-NA-019; TSB No. 16-NA-213; attached hereto as Exhibits T through V; PI No. PIP5437A, attached as Exhibit P; and TSB No. 16-NA-014, attached as Exhibit Q, respectively.

F.     **GM Failed and Continues to Fail to Inform Consumers of the Transmission Defect or Provide a Remedy within a Reasonable Time**

53.    GM has many options for informing purchasers or lessees of the Transmission Defect.  This includes its own website for interested consumers and websites of GM-owned brands such as Chevrolet, GMC, and Cadillac.  None of the relevant webpages informed consumers of the Transmission Defect.

54.    Warranty brochures detailing vehicle protection plans that specifically list transmission as one of the car parts potentially covered by a warranty did not and do not warn consumers about the Transmission Defect.[30]

55.    Individual GM-owned brands also utilize various multimedia outlets—including social media outlets, such as YouTube channels—as a means of displaying their vehicles in action and providing information about vehicles, including those with 8L45 and 8L90 transmissions.  Upon information and belief, no such official media disclose any information about the Transmission Defect.[31]

56.    Defendant has known of the Transmission Defect since, at the latest, October 2015, when PI No. PIP5337 was issued.  However, after more than three years, GM still has not alerted any of its customers or potential customers of the

---

[30] *See, e.g.*, Exhibit E, *2018 Limited Warranty and Owner Assistance Information*.

[31] *See, e.g.*, *Cadillac*, YOUTUBE, https://www.youtube.com/user/cadillac (last visited June 12, 2019).

Transmission Defect in the Class Vehicles.  Defendant also has not developed a solution that permanently repairs the Transmission Defect and restores the functionality of the Class Vehicles.

## V.    CLASS ACTION ALLEGATIONS

57.    Plaintiff brings this action pursuant to the Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3), on behalf of himself and the following Class and Sub-Class:

> **Nationwide Class**: All persons or entities in the United States who purchased, leased, or own a Class Vehicle (the "Nationwide Class" or "Class").

> **Michigan Sub-Class:** All persons or entities who purchased or leased a Class Vehicle in the State of Michigan and all persons or entities in the State of Michigan who purchased, leased or own a Class Vehicle (the "Michigan Sub-Class" or "Sub-Class");

58.    Excluded from the Class and Sub-Class are Defendant and its parents, subsidiaries and corporate affiliates.  Plaintiff reserves the right to revise the definition of the Class and Sub-Class based upon subsequently discovered information and reserve the right to establish additional Sub-Classes where appropriate.  The Class and Sub-Class are collectively referred to herein as the "Classes."

59.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

60.     This action has been brought and may be properly maintained on behalf of the Class proposed herein under Federal Rule of Civil Procedure 23.

61.     <u>Numerosity.</u> Federal Rule of Civil Procedure 23(a)(1): Although the precise number of Class members is unknown and can only be determined through appropriate discovery, Plaintiffs believe, and on that basis allege, that the proposed Classes are so numerous that joinder of all members would be impracticable as Defendant has sold hundreds of thousands of affected vehicles nationwide during the proposed class periods.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, Internet postings, and/or published notice.

62.     <u>Commonality and Predominance</u>. Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, but not limited to:

      a.     Whether GM engaged in the conduct alleged herein;

      b.     Whether GM designed, advertised, marketed, distributed, leased, sold, or otherwise placed the Class Vehicles into the stream of commerce in the United States;

      c.     Whether the GM 8L45 and 8L90 transmissions suffer from a common defect;

d.      Whether GM knew about the Transmission Defect and, if so, when GM first became aware of it;

e.      Whether GM omitted material facts about the Transmission Defect at the time of sale;

f.      Whether the affected transmissions can be fixed or must be replaced;

g.      Whether GM's conduct violates consumer protection statutes, warranty laws and other laws as asserted herein;

h.      Whether GM's conduct was unconscionable, nullifying durational limits in the express warranties;

i.      Whether GM's conduct was purposefully or recklessly indifferent to Class members purchasing or leasing Class Vehicles;

j.      Whether Plaintiff and the Classes overpaid for their defective Class Vehicles;

k.      Whether Plaintiff and the Classes are entitled to damages and other monetary relief and, if so, in what amount; and

l.      Whether Plaintiff and the Classes are entitled to equitable or injunctive relief, including but not limited to a recall or other fix by GM to address the Transmission Defect.

63.     Typicality. Federal Rule of Civil Procedure 23(a)(3): Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through GM's wrongful conduct as described above.

64.     Adequacy. Federal Rule of Civil Procedure 23(a)(4): Plaintiff is an adequate Class representative because his interests do not conflict with the interests of the other members of the Class he seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; and Plaintiff intends to prosecute this action vigorously.   The interests of the Class will be fairly and adequately protected by Plaintiff and his counsel.

65.     Declaratory. Federal Rule of Civil Procedure 23(b)(2): GM has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Class, thereby making appropriate final declaratory relief, as described below, with respect to the Class as a whole.

66.     Superiority. Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action.   The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against GM,

so it would be impracticable for the members of the Class to individually seek redress for GM's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.    TOLLING OF STATUTES OF LIMITATIONS AND ESTOPPEL

67.    Any applicable statute(s) of limitations has been tolled by GM's knowing and active concealment of the Transmission Defect, the misrepresentations and omissions alleged herein, and/or GM's denial of the alleged facts herein. Through no fault or lack of diligence, Plaintiff and Class members could not have reasonably discovered the true, latent nature of the Transmission Defect until shortly before this class action litigation was commenced. As evidenced by its foot-dragging in resolving the issue and implementing a fix, GM was intent on expressly hiding its behavior from regulators and consumers. This is the quintessential case for tolling.

68.    As alleged herein, the existence of the Transmission Defect and corresponding safety risk were material to Plaintiff and members of the Classes at all relevant times. Within the time period of any applicable statutes of limitations, Plaintiff and members of the Classes could not have discovered through the exercise

of reasonable diligence that Defendant was concealing the Transmission Defect.

69.     GM was, and remains, under a continuing duty to disclose to Plaintiff and Class members the true character, quality, and nature of the Class Vehicles, that the defect results from a poor design and/or failures in the manufacturing process, will require costly repairs, poses safety concerns, deprives Plaintiff and Class members of the benefit of their bargain, and diminishes the resale value of Class Vehicles, in addition to causing Class members to pay out of pocket costs to repair their vehicles.

70.     Defendant knowingly, actively and affirmatively concealed the facts alleged herein including the Transmission Defect and safety risk. Plaintiff and members of the Classes reasonably relied on Defendant's knowing, active and affirmative concealment.

71.     For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Defendant's fraudulent concealment and Defendant is estopped from relying on any statutes of limitations in defense of this action.

## VII.   CAUSES OF ACTION

### COUNT I
### Violation Of The Magnuson-Moss Warranty Act
### (15 U.S.C. § 2301, *et seq.*)
### (On behalf of the Nationwide Class, or, alternatively, the Michigan Sub-Class)

72.      Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

73.     This claim is brought on behalf of the Nationwide Class.

37

74.     Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

75.     GM is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(4)-(5).

76.     Class Vehicles are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

77.     15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

78.      GM's express warranties are written warranties within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6).  The Class Vehicles' implied warranties are covered under 15 U.S.C. § 2301(7).

79.     GM breached these warranties, as described in more detail above. Without limitation, the Class Vehicles are equipped with a defective transmission. The Class Vehicles share a common design defect in that the transmissions are defectively designed and unsafe, contrary to GM's representations about its vehicles.

80.     Plaintiff and the other Class members have had sufficient direct dealings with either GM or its agents (e.g., dealerships and technical support) to establish privity of contract with GM.  Nonetheless, privity is not required here because Plaintiff and each of the other Class members are intended third-party beneficiaries of contracts between GM and its dealers, and, specifically, of GM's implied warranties.  The

dealers were not intended to be the ultimate consumers of the Class Vehicles and have no rights under the warranty agreements provided with the Class Vehicles; the warranty agreements were designed for and intended to benefit the consumers only.

81.    Affording GM a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here.  GM has had years to provide a suitable repair for the Transmission Defect and it has failed to do so.

82.    At the time of sale or lease of each defective Class Vehicle, GM knew, should have known, or was reckless in not knowing, of its misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the defective design.  Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Plaintiff resort to an informal dispute resolution procedure and/or afford GM a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

83.    Plaintiff and the other Class members would suffer economic hardship if they returned their Class Vehicles but did not receive the return of all payments made by them.  Because GM is refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiff and the other Class members have not re-accepted their Class Vehicles by retaining them.

84.    The amount in controversy of Plaintiff's individual claims meets or

exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

85.     Plaintiff, individually and on behalf of the other Class members, seeks all damages permitted by law in an amount to be proven at trial.

### COUNT II
### Declaratory Judgment Act, 28 U.S.C. §2201, *et seq.*
### (On behalf of the Nationwide Class)

86.     Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

87.     This claim is brought on behalf of the Nationwide Class.

88.     Declaratory relief is intended to minimize "the danger of avoidable loss and unnecessary accrual of damages." 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2751 (4th ed. 2019).

89.     There is an actual controversy between Plaintiff and the Classes and GM concerning whether the eight-speed transmissions that GM placed in the defective Class Vehicles contain a safety defect, whether GM knew about the Transmission Defect and, if so, how long GM knew of it, whether GM failed to timely notify Plaintiff and the Classes of the Transmission Defect, and whether GM failed to institute a timely recall and fix of the issue.

90.     Pursuant to 28 U.S.C. § 2201, the Court may "declare the rights and legal

relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

91.     Despite numerous complaints, GM has never admitted that the GM 8L45 and 8L90 transmissions are defective, instead blaming any issues on customer confusion about how to operate the system.

92.     As a result of GM's failure to acknowledge and address the Transmission Defect, Plaintiff seeks a declaration that the 8L45 and 8L90 transmission systems are defectively designed.  This declaratory relief will generate common answers that will settle the controversy related to the alleged defective design of the transmissions. There is an economy to resolving these issues as they have the potential to eliminate the need for continued and repeated litigation.

## COUNT III
## Unjust Enrichment
### (On behalf of the Nationwide Class, or, alternatively, the Michigan Sub-Class)

93.     Plaintiff realleges and incorporate by reference all paragraphs as though fully set forth herein.

94.     This Count is brought on behalf of the Nationwide Class, or, alternatively, the Michigan Sub-Class.

95.     GM has received and retained a benefit from Plaintiff and the Classes and inequity has resulted.

96.     GM has benefitted from selling and leasing the Class Vehicles, whose

value was artificially inflated by GM's concealment of the Transmission Defect, at a profit, whereas Plaintiff and the Classes have overpaid for their Class Vehicles and have been forced to pay other costs.

97.    Thus, all members of the Classes conferred a benefit on GM.

98.    It is inequitable for GM to retain those benefits.

99.    Plaintiff and members of the Classes were not aware of the true facts about the Class Vehicles and the Transmission Defect and did not benefit from GM's conduct.

100.   GM knowingly accepted the benefits of its unjust conduct.

101.   As a result of GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

**COUNT IV**
**Violation of the Michigan Consumer Protection Act**
**Mich. Comp. Laws § 445.903, *et seq*.**
**(On behalf of the Michigan Sub-Class)**

102.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

103.   Plaintiff brings this Count on behalf of the Michigan Sub-Class.

104.   Plaintiff and Michigan Sub-Class members are "persons" within the meaning of Mich. Comp. Laws § 445.902(1)(d).

105.   The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of

42

trade or commerce . . . ." Mich. Comp. Laws § 445.903(1).  GM engaged in unfair, unconscionable, or deceptive methods, acts or practices prohibited by the Michigan CPA, including: "(c) Representing that goods or services have … characteristics . . . that they do not have . . . .;" "(e) Representing that goods or services are of a particular standard . . . if they are of another;" "(i) Making false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions;" "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer;" "(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is;" and "(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." Mich. Comp. Laws § 445.903(1).  By failing to disclose and actively concealing that the Defective Transmissions were not safe, by marketing the Defective Transmissions as safe and of high quality, and by presenting itself as a reputable manufacturer that valued safety and stood behind its vehicles after they were sold, GM engaged in deceptive business practices prohibited by the Michigan CPA.

106.    GM owed Plaintiff and members of the Michigan Sub-Class an ongoing duty to disclose the true safety, performance, and reliability of the Class Vehicles, and the devaluing of safety and performance at GM.

107. In the course of its business, GM willfully failed to disclose and actively concealed that the Defective Transmissions are unsafe, and otherwise engaged in activities with a tendency or capacity to deceive. GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of the Class Vehicles.

108. GM represented that goods or services have sponsorship, approval, characteristics, uses, and benefits that they do not have.

109. GM knew it had installed Defective Transmissions in the Class Vehicles, and provided, disseminated, marketed, and otherwise distributed uniform false and misleading advertisements, technical data and other information to consumers regarding the performance, reliability, quality and nature of the Defective Transmissions, while knowing they did not function as advertised. GM knew this since at least 2015 but concealed all of that information.

110. GM represented that goods or services were of a particular standard, quality, or grade, when they were of another.

111. GM engaged in unconscionable commercial practices in failing to reveal material facts and information about the Defective Transmissions, which did, or was intended to, mislead Plaintiff and the Michigan Sub-Class about facts that could not

reasonably be known by the consumer.

112.   GM failed to reveal facts that were material to the transactions in light of representations of fact made in a positive manner.

113.   GM caused Plaintiff and the Michigan Sub-Class to suffer a probability of confusion and a misunderstanding of legal rights, obligations, and/or remedies by and through its conduct.

114.   GM deliberately withheld material facts to Plaintiff and the Michigan Sub-Class with the intent that Plaintiff and the Michigan Sub-Class members rely upon the omission.

115.   GM made material representations and statements of fact to Plaintiff and the Michigan Sub-Class members that resulted in Plaintiff and the Michigan Sub-Class reasonably believing the represented or suggested state of affairs to be other than what they actually were.

116.   GM intended that Plaintiff and the Michigan Sub-Class rely on its misrepresentations and omissions, so that Plaintiff and the Michigan Sub-Class members would purchase or lease Class Vehicles.

117.   Had GM disclosed the omitted material, Plaintiff and the Michigan Sub-Class would not have purchased or leased Class Vehicles or would have paid less for them.

118.   The foregoing acts, omissions and practices proximately caused Plaintiff

45

and the members of Michigan Sub-Class to suffer actual damages.

119.    GM intentionally and knowingly misrepresented material facts regarding the Class Vehicle with the intent to mislead Plaintiff and the Michigan Sub-Class.

120.    GM knew or should have known that its conduct violated the Michigan CPA.

121.    GM's violations present a continuing risk to Plaintiff and members of the Michigan Sub-Class as well as to the general public. GM's unlawful acts and practices complained of herein affect the public interest.

122.    As alleged above, GM made material statements about the safety and utility of the Class Vehicles and the GM brand(s) that were either false or misleading.

123.    As a direct and proximate result of GM's deceptive, misleading, unfair, or unconscionable practices, as set forth above, Plaintiffs and members of the Michigan Sub-Class sustained substantial and ascertainable damages in an amount to be determined at trial, including interest.

124.    As a result of GM's wrongful conduct, Plaintiff and the Michigan Sub-Class have been damaged in an amount to be proven at trial, including, but not limited to, actual damages, punitive damages, equitable relief, deprivation of the benefit of their bargain, diminution of value, and reasonable attorneys' fees.

## COUNT V
### Breach of Express Warranty
### (Mich. Comp. Laws Ann. §§ 440.2313 and 440.2860)
### (On behalf of the Michigan Sub-Class)

125.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

126.    Plaintiff brings this Count on behalf of himself and the Michigan Sub-Class.

127.    GM is and was at all relevant times a "merchant" with respect to motor vehicles under Mich. Comp. Laws Ann. § 440.2104(1) and a "seller" of motor vehicles under § 440.2313(1).

128.    With respect to leases, GM is and was at all relevant times a "lessor" with respect to motor vehicles under Mich. Comp. Laws Ann. §§ 440.2803(1)(p), and 440.2860.

129.    The Class Vehicles are and were at all relevant times "goods" within the meaning of Mich. Comp. Laws Ann. §§ 440.2105(1) and 440.2803(1)(h).

130.    In connection with the purchase or lease of each one of its new vehicles, GM provides an express warranty for remedying vehicle defect and all towing, parts, labor needed to correct the defect.

131.    GM's warranties formed the basis of the bargain that was reached when Plaintiff and Michigan Sub-Class members purchased or leased their Class Vehicles equipped with the Defective Transmissions.

132.   Plaintiff and Michigan Sub-Class members experienced defects within the warranty period. Despite the existence of warranties, GM failed to inform Plaintiff and Michigan Sub-Class members that the Class Vehicles were defective, and failed to fix the Defective Transmissions free of charge.

133.   GM breached the express warranty promising to repair and correct a manufacturing defect or materials or workmanship of any part supplied by GM. GM has not repaired or adjusted, and has been unable to repair or adjust, the Class Vehicles' materials and workmanship defects related to the Defective Transmissions.

134.   Affording GM a reasonable opportunity to cure its breach of written warranties would be unnecessary and futile here.

135.   Furthermore, the limited warranty promising to repair and/or correct a manufacturing defect fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff and Michigan Sub-Class members whole, and because GM has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

136.   Accordingly, recovery by Plaintiff and Michigan Sub-Class members are not limited to the limited warranty promising to repair and/or correct a manufacturing defect, and Plaintiff, individually and on behalf of the other Michigan Sub-Class members, seeks all remedies as allowed by law.

137.   In its capacity as a supplier and/or warrantor, and by the conduct

described herein, any attempt by GM to limit its express warranties in a manner that would enforce the 5 year/60,000 mile limit would be unconscionable. GM's warranties were adhesive, and did not permit negotiation, or the inclusion of design defects. GM possessed superior knowledge of the defects in the 8L45 and 8L90 transmissions prior to offering the vehicles equipped with these transmissions for sale. GM concealed and did not disclose this defect, and GM did not remedy the defect prior to sale (or afterward). Any effort to otherwise limit liability for the design defect is null and void.

138.  Also, as alleged in more detail herein, at the time GM warranted and sold the Class Vehicles, it knew that the Class Vehicles did not conform to GM's warranties and were inherently defective and GM wrongfully and fraudulently concealed material facts regarding its Class Vehicles. Plaintiff and the Michigan Sub-Class members were therefore induced to purchase or lease the Class Vehicles under false and/or fraudulent pretenses.

139.  Moreover, the damages flowing from the Class Vehicles cannot be fully resolved through the limited remedy of replacements or adjustments, as many incidental and consequential damages have already been suffered due to GM's fraudulent conduct as alleged herein. Due to GM's failure and/or continued failure to provide such limited remedy within a reasonable time, any limitation on Plaintiff's and the Michigan Sub-Class members' remedies would be insufficient to make

Plaintiff and the Michigan Sub-Class members whole.

140.    Finally, due to GM's breach of warranty as set forth herein, Plaintiff and the Michigan Sub-Class members assert as an additional and/or alternative remedy, revocation of acceptance of the goods, and for a return to Plaintiff and Michigan Sub-Class members of the purchase or lease price of all Class Vehicles currently owned or leased, and for such other incidental and consequential damages as allowed.

141.    GM was provided notice of these issues by numerous complaints filed against it, including those submitted to NHTSA and the instant Complaint, within a reasonable amount of time after the defect was discovered.

142.    As a direct and proximate result of GM's breach of express warranties, Plaintiff and Michigan Sub-Class members have been damaged in an amount to be determined at trial.

**COUNT VI**
**Breach of Implied Warranty of Merchantability**
**(Mich. Comp. Laws § 440.314)**
**(On behalf of the Michigan Sub-Class)**

143.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

144.    Plaintiff brings this Count on behalf of himself and the Michigan Sub-Class.

145.    GM was a merchant with respect to motor vehicles within the meaning of Mich. Comp. Laws § 440.2314(1).

50

146.   Under Mich. Comp. Laws § 440.2314, a warranty that the Class Vehicles were in merchantable condition was implied by law in the transactions when Plaintiff purchased or leased the Class Vehicles.

147.   A warranty that the Class Vehicles were in merchantable condition is implied by law in the instant transactions. These Class Vehicles, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which cars are used. Specifically, the Class Vehicles are inherently defective in that the Defective Transmission was not adequately designed, manufactured, and tested.

148.   GM was provided notice of these issues by complaints lodged by consumers with NHTSA—which vehicle manufacturers like GM routinely monitor—before or within a reasonable amount of time after the allegations of the Class Vehicle defects became public.

149.   As a direct and proximate result of GM's breach of the warranties of merchantability, Plaintiff and Michigan Sub-Class members have been damaged in an amount to be proven at trial.

### COUNT VII
### Fraud by Omission or Fraudulent Concealment
### (On behalf of the Nationwide Class, or, alternatively, the Michigan Sub-Class)

150.   Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

151. This count is brought on behalf of the Nationwide Class, or, alternatively, the Michigan Sub-class.

152. GM intentionally concealed the Defective Transmissions and the above-described material safety and functionality information, or acted with reckless disregard for the truth, and denied Plaintiff and members of the Classes information that is highly relevant to their purchasing and leasing decisions.

153. GM further affirmatively concealed the Defective Transmissions from Plaintiff and members of the Classes in advertising and other forms of communication, including standard and uniform material provided with each car, and misrepresented that the Class Vehicles it was selling were new, had no significant defects, and would perform and operate properly when driven in normal usage.

154. GM knew at the time it actively concealed this information that this information was material and false.

155. The Class Vehicles purchased or leased by Plaintiff and the other Class members were, in fact, defective, unsafe, and unreliable because the Class Vehicles contained Defective Transmissions, as alleged herein.

156. GM owed Plaintiff and members of the Classes a duty to disclose the true safety, performance, and reliability of the Class Vehicles, and the devaluing of safety and performance at GM, because Plaintiff and the other Class members relied on GM's material representations that the Class Vehicles they were purchasing were

safe and free from defects.

157.   The aforementioned concealment was material because if it had been disclosed Plaintiff and the other Class members would not have bought or leased the Class Vehicles, or would not have bought or leased those vehicles at the prices they paid.

158.   Plaintiff and the other Class members relied on GM's reputation – along with GM's failure to disclose the faulty and defective nature of the Defective Transmissions – in purchasing or leasing GM's Class Vehicles.

159.   As a result of their reliance, Plaintiff and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, actual damages, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Class Vehicles.

160.   GM's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiff and the other Class members. Plaintiff and the other Class members are therefore entitled to an award of punitive damages.

## VIII.  PRAYER FOR RELIEF

Plaintiff, individually and on behalf of members of the Classes, respectfully requests the Court enter judgment in favor of Plaintiff and the Classes and against Defendant as follows:

- An order certifying this action as a class action pursuant to Rule 23 of theFederal Rules of Civil Procedure, declaring Plaintiff as the representative of the Class and Sub-Class, and Plaintiff's counsel as counsel for the Class and Sub-Class;

- An Order awarding declaratory relief and temporarily and permanently enjoining General Motors from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

- Injunctive and equitable relief in the form of a comprehensive program to repair or replace the Defective Transmissions in all Class Vehicles and to provide replacement cars of comparable value for use by Class Vehicle owners and lessees during repair/replacement, and/or buyback all Class Vehicles, and to fully reimburse and make whole all Class and Sub-Class members for all costs and economic losses;

- A declaration that Defendant is financially responsible for all Class notice and the administration of Class relief;

- An Order awarding costs, restitution, statutory, actual, exemplary and punitive damages, and compensatory damages for economic loss, diminished value and out-of-pocket losses, and any and all equitable remedies, including, but not limited to, disgorgement in an amount to be determined at trial;

- An Order awarding any applicable statutory and civil penalties;

- A declaration that Defendant is required to engage in corrective advertising, including notifying all Class Vehicle owners and lessees not to drive Class vehicles until they have been repaired and providing information regarding the timeline for repair or replacement of the Defective Transmissions in all Class Vehicles;

- An Order requiring General Motors to pay both pre- and post- judgment interest on any amounts awarded;

- An award of costs and attorneys' fees; and

- Such other or further relief as may be appropriate.

54

## IX.   DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial

by jury of any and all issues in this action so triable of right.


Dated: June 18, 2019                    Respectfully submitted,

                                        /s/ *E. Powell Miller*
                                        E. Powell Miller (P39487)
                                        Sharon S. Almonrode (P33938)
                                        William Kalas (P82113)
                                        **THE MILLER LAW FIRM, P.C.**
                                        950 West University Drive, Suite 300
                                        Rochester, MI 48307
                                        Tel: (248) 841-2200
                                        Fax: (248) 652-2852
                                        epm@millerlawpc.com
                                        ssa@millerlawpc.com
                                        wk@millerlawpc.com


                                        Joseph H. Meltzer
                                        Melissa L. Troutner
                                        Natalie Lesser
                                        **KESSLER TOPAZ**
                                        **MELTZER & CHECK, LLP**
                                        280 King of Prussia Road
                                        Radnor, PA 19087
                                        Tel.:   (610) 667-7706
                                        Fax:   (610) 667-7056
                                        jmeltzer@ktmc.com
                                        mtroutner@ktmc.com
                                        nlesser@ktmc.com


                                        **GUSTAFSON GLUEK PLLC**
                                        Daniel E. Gustafson
                                        Jason S. Kilene
                                        David A. Goodwin

Raina C. Borrelli
Canadian Pacific Plaza
120 S. Sixth St., Suite 2600
Minneapolis, MN 55402
Tel: (612) 333-8844
Fax: (612) 339-6622
dgustafson@gustafsongluek.com
jkilene@gustafsongluek.com
dgoodwin@gustafsongluek.com
rborrelli@gustafsongluek.com

**TYCKO & ZAVAREEI LLP**
Hassan A. Zavareei
1828 L Street, NW
Suite 1000
Washington, DC 20036
Tel: (202) 973-0900
Fax: (202) 973-0950
hzavareei@tzlegal.com

*Attorneys for Plaintiff*