## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| LOUIS RAY, on behalf himself and all others similarly situated,<br><br>                Plaintiffs,<br><br>     v.<br><br>GENERAL MOTORS LLC,<br><br>                Defendant. | Civil Action No. 2:19-cv-11808-DML-SDD<br><br>Judge David M. Lawson<br>Magistrate Judge Stephanie Dawkins Davis |

## GENERAL MOTORS' MOTION TO DISMISS
## CLASS ACTION COMPLAINT
## AND TO STRIKE NATIONWIDE CLASS ALLEGATIONS

General Motors LLC respectfully moves (i) to dismiss all claims in plaintiff's Class Action Complaint (ECF No. 17), pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), and, in the alternative, (ii) to strike plaintiff's nationwide class allegations, pursuant to Federal Rules of Civil Procedure 12(f) and 23. The grounds and legal authority are set forth in the accompanying memorandum.

On September 9, 2019, pursuant to Local Rule 7.1(a), GM communicated with plaintiff's counsel by telephone and requested consent to this motion, and plaintiffs do not consent.

September 10, 2019                    Respectfully submitted,

                                     */s/ Kathleen Taylor Sooy*
                                     Kathleen Taylor Sooy
                                     Jerome A. Murphy
                                     Jared A. Levine
                                     CROWELL & MORING LLP
                                     1001 Pennsylvania Avenue, N.W.
                                     Washington,     DC      20004
                                     Telephone: (202) 624-2500
                                     Fax:       (202)       628-5116
                                     ksooy@crowell.com
                                     jmurphy@crowell.com
                                     jalevine@crowell.com

                                     BUSH SEYFERTH & PAIGE
                                     PLLC
                                     Stephanie A. Douglas
                                     3001 W. Big Beaver Road
                                     Suite 600
                                     Troy, MI 48084
                                     Telephone: (248) 822-7806
                                     Fax: (248) 822-7806
                                     douglas@bsplaw.com

                                     *Counsel   for   General   Motors   LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

LOUIS RAY, on behalf himself and
all others similarly situated,

                    Plaintiffs,

          v.

GENERAL MOTORS LLC,

                    Defendant.

Civil Action No. 2:19-cv-11808-DML-SDD

Judge David M. Lawson
Magistrate Judge Stephanie Dawkins Davis

## MEMORANDUM IN SUPPORT OF
## GENERAL MOTORS' MOTION TO DISMISS
## CLASS ACTION COMPLAINT
## AND TO STRIKE NATIONWIDE CLASS ALLEGATIONS

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................... iii

STATEMENT OF ISSUES PRESENTED............................................. ix

STATEMENT OF CONTROLLING OR MOST APPROPRIATE
     AUTHORITY ................................................................... xi

INTRODUCTION ............................................................................... 1

STATEMENT OF FACTS ................................................................... 3

LEGAL STANDARDS ....................................................................... 5

ARGUMENT ...................................................................................... 6

I.     PLAINTIFF DOES NOT PLEAD A VIABLE BREACH OF
     EXPRESS WARRANTY CLAIM. ............................................. 6

     A.     The GM Limited Warranty Does Not Apply. ..................... 6

     B.     Plaintiff Does Not Allege That He Sought Repairs During the
          Warranty Period. ......................................................... 8

II.    PLAINTIFF DOES NOT PLEAD A VIABLE STATE LAW
     IMPLIED WARRANTY CLAIM................................................ 9

III.   PLAINTIFF DOES NOT PLEAD A VIABLE CLAIM UNDER THE
     MAGNUSON-MOSS WARRANTY ACT............................... 11

IV.   PLAINTIFF'S FRAUDULENT CONCEALMENT CLAIM FAILS
     ON MULTIPLE GROUNDS. .................................................. 12

     A.     Plaintiff Does Not Satisfy Rule 9(b). ............................. 12

     B.     Plaintiff Does Not Allege a Duty to Disclose for GM. ...... 13

          1.     Plaintiff Cannot Allege a Duty to Disclose. ............ 13

          2.     Plaintiff Does Not Allege GM Had Knowledge of a
               Defect at the Time of Sale. .................................... 14

i

## <u>TABLE OF CONTENTS</u>
(continued)

Page

V.    PLAINTIFF DOES NOT STATE A VIABLE MCPA CLAIM. .................19

VI.   PLAINTIFF DOES NOT PLEAD A VIABLE UNJUST
      ENRICHMENT CLAIM. ............................................................................ 20

VII.  PLAINTIFF DOES NOT PLEAD A VIABLE DECLARATORY
      JUDGMENT CLAIM. ................................................................................ 21

VIII. PLAINTIFF'S NATIONWIDE CLASS ALLEGATIONS SHOULD
      BE STRICKEN. ......................................................................................... 22

      A.    Plaintiff Lacks Standing For A Nationwide Class. ........................... 22

      B.    Plaintiff's Nationwide MMWA and Unjust Enrichment Claims
            Cannot Meet Rule 23 Requirements Because They Would Be
            Governed by the Disparate Laws of Fifty States. ............................. 22

CONCLUSION ................................................................................................... 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acedo v. DMAX, Ltd. & Gen. Motors LLC*,
   No. 15-cv-02443, 2015 WL 12696176 (C.D. Cal. Nov. 13, 2015) ..................... 8

*Alban v. BMW of N. Am., LLC*,
   No. 09-5398, 2011 WL 900114 (D.N.J. Mar. 15, 2011) .................................. 19

*In re Am. Med. Sys., Inc.*,
   75 F.3d 1069 (6th Cir. 1996) ............................................................................ 24

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................ 5

*Beck v. FCA US LLC*,
   273 F. Supp. 3d 735 (E.D. Mich. 2017) .................................................... 14, 16

*Berenblat v. Apple, Inc.*,
   Nos. 08-4969 *et al.*, 2010 WL 1460297  (N.D. Cal. Apr. 9, 2010) ................... 17

*Boyer v. Diversified Consultants, Inc.*,
   306 F.R.D. 536 (E.D. Mich. 2015) ................................................................... 24

*Callaghan v. BMW of N. Am., LLC*,
   No. 13-cv-04794-JD, 2014 WL 6629254 (N.D. Cal. Nov. 21,
   2014) ................................................................................................................. 13

*Chaudoin v. Thor Motor Coach, Inc.*,
   No. 15-13871, 2017 WL 3485803 (E.D. Mich. Aug. 15, 2017) ....................... 19

*City of Wyoming v. Procter & Gamble Co.*,
   210 F. Supp. 3d 1137 (D. Minn. 2016) ............................................................. 21

*Cole v. Gen. Motors Corp.*,
   484 F.3d 717 (5th Cir. 2007) ............................................................................ 23

*Davidson v. Apple*,
   No. 16-CV-04942-LHK, 2017 WL 976048 (N.D. Cal. Mar. 14,
   2017) ................................................................................................................... 7

*DeCoteau v. FCA US LLC*,
No. 2:15-cv-00020-MCE-EFB, 2015 WL 6951296 (E.D. Cal. Nov. 10, 2015) ........................................................................................ 13

*Delta Turner, Ltd. v. Grand Rapids--Kent Cty. Convention/Arena Auth.*,
600 F. Supp. 2d 920 (W.D. Mich. 2009) ........................................... 21

*Duffie v. Michigan Grp., Inc. – Livingston*,
No. 14-cv-14148, 2016 WL 28987 (E.D. Mich. Jan. 15, 2016) ........ 20

*In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*,
966 F. Supp. 1525 (E.D. Mo. 1997) ................................................. 10

*In re Gen. Motors LLC Ignition Switch Litig.*,
257 F. Supp. 3d 372 (S.D.N.Y. 2017) .............................................. 14

*Gertz v. Toyota Motor Corp.*,
No. CV 10-1089 PSG, 2011 WL 3681647 (C.D. Cal. Aug. 22, 2011) .................................................................................................. 7

*Green v. Liberty Ins. Corp.*,
No. 15-10434, 2016 WL 1259110 (E.D. Mich. Mar. 30, 2016) ......... 6

*Grodzitsky v. Am. Honda Motor Co.*,
No. 2:12-cv-1142-SVW-PLA, 2013 WL 690822 (C.D. Cal. Feb. 19, 2013) ............................................................................................ 16

*Hadley v. Chrysler Grp., LLC*,
624 F. App'x 374 (6th Cir. 2015) .................................................... 10

*Herrera v. Volkswagen Grp. of Am., Inc.*,
No. 16-00364-CJC, 2016 WL 10000085 (C.D. Cal. Sept. 9, 2016) .................13

*Hindsman v. Gen. Motors LLC*,
No. 17-cv-05337, 2018 WL 2463113 (N.D. Cal. June 1, 2018) .........8

*Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*,
989 F. Supp. 838 (E.D. Mich. 1997) ............................................... 21

*Jimenez v. Allstate Indem. Co.*,
No. 07-cv-14494, 2010 WL 3623176 (E.D. Mich. Sept. 15, 2010) ....................6

iv

*Jimenez v. Ford Motor Credit Co.*,
  Dkt. No. 322909, 2015 WL 9318913 (Mich. Ct. App. Dec. 22,
  2015) ........................................................................................................ 19

*Johnson v. Nissan N. Am., Inc.*,
  272 F. Supp. 3d 1168 (N.D. Cal. 2017) ............................................ 22

*League of United Latin Am. Citizens v. Bredesen*,
  500 F.3d 523 (6th Cir. 2007) .............................................................. 5

*Loreto v. Procter & Gamble Co.*,
  515 F. App'x 576 (6th Cir. 2013) ...................................................... 24

*MacDonald v. Thomas M. Cooley Law Sch.*,
  724 F.3d 654 (6th Cir. 2013) ............................................................ 12

*Marshall v. Hyundai Motor Am.*,
  51 F. Supp. 3d 451 (S.D.N.Y. 2014) ................................................ 21

*Matanky v. Gen. Motors LLC*,
  370 F. Supp. 3d 772 (E.D. Mich. 2019) ........................... 7, 14, 20, 22

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) ............................................................ 23

*McKee v. General Motors LLC*,
  376 F. Supp. 3d 751 (E.D. Mich. 2019) ...................................... 8, 22

*McQueen v. BMW of N. Am., LLC*,
  No. 12-6674, 2013 WL 4607353 (D.N.J. Aug. 29, 2013) ........... 13, 16

*Miles v. Am. Honda Motor Co.*,
  No. 17-c-4423, 2017 WL 4742193 (N.D. Ill. Oct. 19, 2017) ........... 24

*Miller v. Gen. Motors, LLC*,
  No. 17-cv-14032, 2018 WL 2740240 (E.D. Mich. June 7, 2018) ........ 9

*Nardizzi v. Gen. Motors LLC*,
  No. CV 19-03665, Dkt. 31 (C.D. Cal. Aug. 29, 2019) ............. 8, 11, 17

*Oliver v. Funai Corp.*,
  No. 14-04532, 2015 WL 9304541 (D.N.J. Dec. 21, 2015) ............... 17

*In re OnStar Contract Litig.*,
  600 F. Supp. 2d 861 (E.D. Mich. 2009) ............................................................ 9

*Oom v. Michaels Cos.*,
  No. 1:16-cv-257, 2017 WL 3048540 (W.D. Mich. July 19, 2017) ....................24

*Oscar v. BMW of N. Am., LLC*,
  274 F.R.D. 498 (S.D.N.Y. 2011) ..................................................................... 25

*In re Packaged Ice Antitrust Litig.*,
  779 F. Supp. 2d 642 (E.D. Mich. 2011) ........................................................... 22

*Pilgrim v. Universal Health Card, LLC*,
  660 F.3d 943 (6th Cir. 2011) .......................................................................... 24

*Power Process Eng'g Co., Inc. v. ValvTechnologies, Inc.*,
  No. 16-CV-11524, 2016 WL 7100504 (E.D. Mich. Dec. 6, 2016) ....................20

*Rasnic v. FCA US LLC*,
  No. 17-2064-KHV, 2017 WL 6406880 (D. Kan. Dec. 15, 2017) ...............23, 24

*Republic Bank & Tr. Co. v. Bear Stearns & Co.*,
  683 F.3d 239 (6th Cir. 2012) ................................................................ 6, 12, 13

*Resnick v. Hyundai Motor Am., Inc.*,
  No. 16-00593, 2016 WL 9455016 (C.D. Cal. Nov. 14, 2016) ................... 17, 18

*Roe v. Ford Motor Co.*,
  No. 2:18-CV-12528-LJM-APP, 2019 WL 3564589 (E.D. Mich.
  Aug. 6, 2019) ...................................................................................... 9, 16, 17

*Rosenbaum v. Toyota Motor Sales, USA, Inc.*,
  No. 16-CV-12645, 2016 WL 9775018 (E.D. Mich. Oct. 21, 2016) .............9, 19

*Rosipko v. FCA US, LLC*,
  No. 15-11030, 2015 WL 8007649 (E.D. Mich. Dec. 7, 2015)................... 20, 23

*Schechner v. Whirlpool Corp.*,
  237 F. Supp. 3d 601 (E.D. Mich. 2017) ....................................................... 7, 21

*Sloan v. Gen. Motors LLC*,
  No. 16-cv-07244-EMC, 2017 WL 3283998 (N.D. Cal. Aug. 1,
  2017) ..................................................................................... 6, 8, 15, 16

*Solo v. UPS Co.*,
    819 F.3d 788 (6th Cir. 2016) ........................................................................... 20

*Stevenson v. Mazda Motor of Am., Inc.*,
    No. 14-5250-FLW-DEA, 2015 WL 3487756 (D.N.J. June 2, 2015) .....15, 16, 17

*Storey v. Attends Healthcare Prods., Inc.*,
    No. 15-cv-13577, 2016 WL 3125210 (E.D. Mich. June 3, 2016) .............. 14, 21

*Temple v. Fleetwood Enters., Inc.*,
    133 F. App'x 254 (6th Cir. 2005) ................................................................... 11

*Thompson v. Jiffy Lube Int'l, Inc.*,
    250 F.R.D. 607 (D. Kan. 2008) ....................................................................... 23

*Vanalstine v. Land O'Lakes Purina Feeds, LLC*,
    929 N.W.2d 789 (Mich. Ct. App. 2018) .......................................................... 11

*Victorino v. FCA US LLC*,
    No. 16-cv-1617-GPC, 2018 WL 1083395 (S.D. Cal. Feb. 27, 2018) ...............15

*Weddle v. Smith & Nephew, Inc.*,
    No. 14-C-09549, 2016 WL 1407634 (N.D. Ill. April 11, 2016) ...................... 10

*Whirlpool Corp. v. Grigoleit Co.*,
    713 F.3d 316 (6th Cir. 2013) ............................................................................ 8

*Williams v. Scottrade, Inc.*,
    No. 06-10677, 2006 WL 2077588 (E.D. Mich. July 24, 2006) .................. 12, 20

*Williams v. Yamaha Motor Co.*,
    851 F.3d 1015 (9th Cir. 2017) ........................................................................ 16

*Wozniak v. Ford Motor Co.*,
    No. 2:17-cv-12794, 2019 WL 108845 (E.D. Mich. Jan. 4, 2019) ........5, 6, 17, 22

*Zanger v. Gulf Stream Coach, Inc.*,
    No. 05-72300, 2006 WL 1494952 (E.D. Mich. May 25, 2006) ....................... 11

**Statutes**

Declaratory Judgment Act, 28 U.S.C. § 2201 .................................................. 2, 21

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 ............................................. 1, 11

MICH. COMP. LAWS § 440.2316(2) ......................................................................... 11

Michigan Consumer Protection Act, MICH. COMP. LAWS § 445.901 ............ 1, 2, 20

**Other Authorities**

Fed. R. Civ. P. 8 ................................................................................................... 12

Fed. R. Civ. P. 9(b) ......................................................................................... *passim*

Fed. R. Civ. P. 12(b)(6) ...................................................................................... 1, 6

Fed. R. Civ. P. 23 ............................................................................................. 2, 23

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.      Should this Court dismiss plaintiff's express warranty claim in Count 5 because GM's Limited Warranty does not cover design defects and because plaintiff does not allege that he presented his vehicle for repair during the warranty period?

2.      Should this Court dismiss plaintiff's implied warranty claim in Count 6 because he does not allege that his vehicle was unmerchantable (unfit for the ordinary purpose of transportation) and because he does not allege that he presented his vehicle for repair during the warranty period?

3.      Should this Court dismiss plaintiff's claims under the Magnuson-Moss Warranty Act in Count 1 because he does not allege viable state law warranty claims?

4.      Should this Court dismiss plaintiff's Michigan Consumer Protection Act and fraud claims in Counts 4 and 7 because he does not allege facts sufficient to establish deceptive advertising, reliance, causation, or injury as required by Rules 8 and 9(b)?

5.      Should this Court dismiss plaintiff's Michigan Consumer Protection Act and fraud claims in Counts 4 and 7 because he does not allege that GM had knowledge of a defect at the time of sale or a duty to disclose?

6.      Should this Court dismiss plaintiff's Michigan Consumer Protection

Act claim in Count 4 because Michigan law exempts motor vehicle sales from the MCPA?

7.     Should this Court dismiss plaintiff's unjust enrichment claim in Count 3 because it is precluded by the existence of an express contract (GM's Limited Warranty) or an adequate remedy at law?

8.     Should this Court dismiss plaintiff's Declaratory Judgment Act claim in Count 2 because it seeks the same relief as his other causes of action?

9.     Should this Court strike plaintiff's "nationwide" class allegations because (i) a single Michigan plaintiff lacks standing to bring claims under the laws of the 49 states in which he did not purchase a vehicle or suffer any injury; and (ii) the class members' claims would be governed by the disparate laws of 50 different states?

General Motors answers "yes" to each of these questions.

Plaintiffs answer "no" to each of these questions.

# STATEMENT OF
## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITY</u>

The controlling or most appropriate authorities for the relief sought by GM

include:

## <u>Cases</u>

*Acedo v. DMAX, Ltd. and General Motors LLC*,
         2015 WL 12696176 (C.D. Cal. Nov. 13, 2015)

*Beck v. FCA US LLC*,
         273 F. Supp. 3d 735 (E.D. Mich. 2017)

*Gertz v. Toyota Motor Corp.*,
         2011 WL 3681647 (C.D. Cal. Aug. 22, 2011)

*Herrera v. Volkswagen Grp. of Am., Inc.*,
         2016 WL 10000085 (C.D. Cal. Sept. 9, 2016)

*Hindsman v. Gen. Motors LLC*,
         2018 WL 2463113 (N.D. Cal. June 1, 2018)

*Matanky v. Gen. Motors*,
         370 F. Supp. 3d 772 (E.D. Mich. 2019)

*Philips v. Ford Motor Co.*,
         2015 WL 4111448 (N.D. Cal. July 7, 2015)

*Republic Bank & Tr. Co. v. Bear Stearns & Co.*,
         683 F.3d 239 (6th Cir. 2012)

*Rosenbaum v. Toyota Motor Sales, USA, Inc.*,
         2016 WL 9775018 (E.D. Mich. Oct. 21, 2016)

*Schechner v. Whirlpool Corp.*,
         237 F. Supp. 3d 601 (E.D. Mich. 2017)

*Sloan v. Gen. Motors LLC*,
       2017 WL 3283998 (N.D. Cal. Aug. 1, 2017)

*Wozniak v. Ford Motor Co.*,
       2019 WL 108845 (E.D. Mich. Jan. 4, 2019)

## **Rules**

Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 9(b)

Fed. R. Civ. P. 8

## **INTRODUCTION**

Plaintiff alleges that the transmission in his GM vehicle experiences a "shake, shudder, jerk, clunk, or 'hard shift'" when changing gears. He speculates that his symptoms arise from an unspecified "Transmission Defect," which he alleges is a common design defect in 'hundreds of thousands" of GM vehicles equipped with 8L45 or 8L90 transmissions (the "Class Vehicles").

Plaintiff alleges three causes of action on behalf of a putative nationwide class (or alternatively, a Michigan sub-class), including (i) breach of express warranty under the federal Magnuson-Moss Warranty Act; (ii) unjust enrichment; and (iii) declaratory judgment. Plaintiff alleges an additional three causes of action on behalf of a Michigan sub-class, including (i) breach of implied warranty; (ii) violations of Michigan's Consumer Protection Act; and (iii) fraud. All claims are subject to dismissal under Rules 12(b)(6) and 9(b).

First, the state law and MMWA express warranty claims (Counts 1 and 5) fail because (i) plaintiff's alleged transmission design defect is not covered under GM's New Vehicle Limited Warranty, which covers only manufacturing defects; and (ii) plaintiff does not allege that he presented his vehicle for repair during the warranty period.

Second, the implied warranty claim (Count 6) fails because plaintiff does not allege (i) that his vehicle was unfit for the ordinary purpose of transportation; or

1

(ii) that he presented his vehicle for repair during the warranty period.

Third, the Michigan Consumer Protection Act claim (Count 4) and fraud claim (Count 7) fail because plaintiff does not plead deceptive advertising, reliance, causation, or injury with the particularity required by Rule 9(b). These claims also fail because plaintiff does not adequately allege that GM had knowledge of a defect at the time of sale or a duty to disclose.

Fourth, the Michigan Consumer Protection Act claim (Count 4) fails because Michigan law exempts motor vehicle sales from the MCPA.

Fifth, the unjust enrichment claim (Count 3) is barred by the existence of an express warranty and adequate legal remedies.

Sixth, the Declaratory Judgment Act claim (Count 2) fails because it seeks the same relief as plaintiff's other causes of action.

Finally, if any claims proceed, plaintiff's nationwide class allegations must be stricken because (i) the single Michigan plaintiff lacks standing to assert claims under the laws of the 49 states in which he did not purchase a vehicle or suffer any injury; and (ii) the putative class members' claims would be governed by the disparate laws of 50 different states, defeating Rule 23 commonality and predominance requirements.

## STATEMENT OF FACTS

In August 2017, plaintiff purchased a used 2015 Cadillac Escalade with an 8L90 automatic transmission from an independent dealer in Michigan. Compl. ¶ 14. Plaintiff alleges that he purchased his Escalade due to its "reputation for passenger safety, reliability, and utility" after he reviewed unspecified "GM[] advertising." *Id.*

Plaintiff alleges that he experienced generalized transmission problems, including "hesitation, shaking, kicking, and lurching," which occurred at different times over the life of his vehicle. *Id.* ¶ 15. Plaintiff also alleges that, on one occasion, his vehicle would not drive in reverse. *Id.* He alleges that GM has not repaired these issues under the GM New Vehicle Limited Warranty. *Id.*

Plaintiff speculates that his transmission issues arise from an alleged "common defect" in all GM vehicles equipped with 8L45 or 8L90 transmissions. *Id.* ¶ 3. Plaintiff defines the "Transmission Defect" broadly to include any symptom in which a transmission "hesitates, shakes, shudder[s], bucks, kicks, jerks, harshly engages, or shifts when the automatic transmission changes gears" (*id.* ¶ 3), or in which drivers experience "sudden acceleration, delays while downshifting, delayed acceleration, and difficulty stopping the vehicle" (*id.* ¶ 32).

Plaintiff speculates that GM had knowledge of the alleged defect in his used Escalade because, from April 4, 2017 to November 6, 2018, 12 consumers

submitted complaints to the National Highway Traffic Safety Administration about generalized transmission issues in two different GM vehicles, the GMC Sierra and Chevrolet Silverado. *Id.* ¶ 38; *see also id.*, Ex. F & G.[1] All but two of these complaints were submitted *after* plaintiff purchased his used vehicle on August 14, 2017, and none involve a Cadillac Escalade. *Id.*, Ex. F & G. These 12 complaints also vary widely, alleging different symptoms and causes. *Id.*[2]

Plaintiff further speculates that GM had knowledge of a defect because, from May 2015 to May 2018, 9 consumers published complaints on third-party websites about generalized transmission issues in various GM vehicles. *Id.* ¶ 39; *id.*, Ex. B-D & H-O. These complaints also do not describe a common symptom or a common cause.[3] None of these complaints involve a Cadillac Escalade, either.

Plaintiff also speculates that GM had knowledge of a defect because, from October 2015 to May 2019, GM issued routine service bulletins informing dealership service personnel that some drivers "might complain" about a broad

---

[1] The attached Exhibit 2 summarizes the date, make, and model year of vehicles in NHTSA and consumer complaints cited in, or attached to, the complaint.

[2] *See id.* ¶ 38(1) ("unexpected acceleration," a vehicle that "shifts fine at HWY speeds," and a transmission that "jumps into low gear when slowing down"); *see also id.* ¶ 38(2) ("an abnormal noise when shifting gears," a "hard shift when accelerating and decelerating," and "vibration issues").

[3] *See id.* ¶ 39 ( "hard shifts," "erratic RPM bounce," a "bogged down feeling like the car is in too high of a gear," "random clunking," a truck that "shakes and lacks power," and an engine that "is very noisy and idles like it wants to stall.").

spectrum of issues in small minorities of vehicles. *Id.* ¶¶ 41-56; *id.*, Ex. P-V. These bulletins describe different issues, with different symptoms, causes, and remedies,[4] and involve different vehicles, as well as vehicles with entirely different transmissions. These bulletins do *not* suggest that repairs are necessary in all Class Vehicles. To the contrary, the bulletins inform dealers to conduct repairs only in the event a customer experiences one of these discrete issues.

## LEGAL STANDARDS

To survive a motion to dismiss for failure to state a claim, a complaint must set forth enough non-conclusory allegations to show that liability for the alleged conduct is not merely possible but plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Factual allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show *entitlement* to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007).

Claims arising from fraud allegations "must meet the heightened pleading standard of Civil Rule 9(b)."[5] *Wozniak v. Ford Motor Co.*, No. 2:17-cv-12794, 2019 WL 108845, at *3 (E.D. Mich. Jan. 4, 2019). Plaintiffs must plead "the who,

---

[4] These bulletins address, among others: (i) shakes and/or shudders during vehicle acceleration (*id.* ¶¶ 42-45); (ii) "delayed engagement" when shifting between park and reverse after the vehicle has been "sitting with [the] engine off" (*id.* ¶¶ 46); (iii) transmissions "experiencing premature wear" (*id.* ¶ 47); and (iv) adaptive software problems requiring "reprogramming" (*id.* ¶ 51).

[5] Unpublished authorities are attached as Exhibit 3.

what, when, where, and how" of the allegedly fraudulent conduct. *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 256 (6th Cir. 2012).

In a class complaint, named plaintiffs "lack standing to bring claims under the laws of" states in which they do not reside or in which they suffered no injury. *Wozniak*, 2019 WL 108845, at *1. And '[w]hen the defendant challenges class certification based solely on the allegations in the complaint, the standard is the same as that applied in deciding a motion to dismiss under Rule 12(b)(6)." *Jimenez v. Allstate Indem. Co.*, No. 07-cv-14494, 2010 WL 3623176, at *3 (E.D. Mich. Sept. 15, 2010); *Green v. Liberty Ins. Corp.*, No. 15-10434, 2016 WL 1259110, at *2 (E.D. Mich. Mar. 30, 2016).

## **ARGUMENT**

### I. **PLAINTIFF DOES NOT PLEAD A VIABLE BREACH OF EXPRESS WARRANTY CLAIM.**

#### A. **The GM Limited Warranty Does Not Apply.**

Plaintiff's express warranty claim fails because his alleged transmission design defect is not covered by GM's Limited Warranty, which limits coverage to "any vehicle defect . . . [related to] materials or workmanship occurring during the warranty period." Compl. ¶ 31; *see Sloan v. Gen. Motors LLC*, No. 16-cv-07244-EMC, 2017 WL 3283998, at *8 (N.D. Cal. Aug. 1, 2017) ('[T]he overwhelming weight of state law authority holds that design defects are *not* covered under" GM's Limited Warranty).

6

There are two distinct categories of product defects: manufacturing defects (materials and workmanship) and design defects.

> A manufacturing defect exists when an item is produced in a substandard condition, and [s]uch a defect is often demonstrated by showing the product performed differently from other ostensibly identical units of the same product line. A design defect, in contrast, exists when the product is built in accordance with its intended specifications, but the design itself is inherently defective.

*Davidson v. Apple*, No. 16-CV-04942-LHK, 2017 WL 976048, at *11 (N.D. Cal. Mar. 14, 2017) (internal citations and quotation marks omitted).

Here, plaintiff alleges that all "Class Vehicles share a common design defect in that the transmissions are defectively designed and unsafe[.]" Compl. ¶ 79. Where a defect is alleged in all vehicles, not only the vehicle own by the plaintiff, the claim is for an alleged design defect. *Gertz v. Toyota Motor Corp.*, No. CV 10-1089 PSG, 2011 WL 3681647, at *10 (C.D. Cal. Aug. 22, 2011).

Alleged design defects are "not covered by GM's express warranty, which covers only defects in 'material or workmanship.'" *Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 788 (E.D. Mich. 2019). A claim for breach of an express warranty "fails as a matter of law if it alleges a design defect, but is brought under an 'express written warranty covering materials and workmanship.'" *Schechner v. Whirlpool Corp.*, 237 F. Supp. 3d 601, 613 (E.D. Mich. 2017).

Numerous courts have enforced the plain language of GM's warranty at the

motion to dismiss stage, and specifically held that it does not cover alleged design defects.[6] *See Hindsman v. Gen. Motors LLC*, No. 17-cv-05337, 2018 WL 2463113, at *6 (N.D. Cal. June 1, 2018) (GM's "New Vehicle Limited Warranties cover defects in materials or workmanship [and] do not cover design defects."); *Nardizzi v. Gen. Motors LLC*, No. CV 19-03665, Dkt. 31 at 6 (C.D. Cal. Aug. 29, 2019) ("To state a claim for breach of [GM's] express warranty, Plaintiff must allege that the defect is due to materials or workmanship."); *Acedo v. DMAX, Ltd. & Gen. Motors LLC*, No. 15-cv-02443, 2015 WL 12696176, at *23 (C.D. Cal. Nov. 13, 2015) (GM warranty "clearly limits coverage to 'defects in materials and workmanship'"); *Sloan*, 2017 WL 3283998, at *8.[7]

## B.   Plaintiff Does Not Allege That He Sought Repairs During the Warranty Period.

Plaintiff does not allege that he presented his vehicle to an independent GM dealer for repair during the warranty period. Under GM's Limited Warranty, to

---

[6] Plaintiff's conclusory allegation that the exclusion of design defects from GM's Warranty is unconscionable is insufficient to avoid dismissal. *See, e.g.*, *Whirlpool Corp. v. Grigoleit Co.*, 713 F.3d 316, 321 (6th Cir. 2013).

[7] A single inconsistent decision, *McKee v. General Motors LLC*, held that all defects are covered by the GM warranty, including design defects. 376 F. Supp. 3d 751, 756-57 (E.D. Mich. 2019). Focusing on the absence of a comma, the Court adopted an interpretation that, contrary to basic contract construction principles, would give no meaning to the phrase "occurring during the warranty period," rendering this language superfluous. GM respectfully states that the only reasonable view giving meaning to every word in the warranty provision limits its "Limited Warranty" to manufacturing defects. *Id.*

obtain warranty repairs, the owner must "take the vehicle to a [GM] dealer facility within the warranty period and request the needed repairs." Compl. ¶ 31. The warranty periods are 3 years/36,000 miles for bumper-to-bumper coverage and 5 years/60,000 miles for powertrain coverage. *Id.*

Here, plaintiff alleges that he took his vehicle to "his dealership for repair," where the dealership "performed a computer reset" that allegedly "has not remedied the issues." *Id.* ¶ 15. But plaintiff fails to allege when he visited this dealership, the mileage on his vehicle at the time of his visit, and whether his vehicle was still covered under warranty at that time. Courts routinely dismiss claims for breach of limited warranties where plaintiffs do not allege that they sought repairs "within the durational limits specifi[ed] in their respective [] warranties." *See In re OnStar Contract Litig.*, 600 F. Supp. 2d 861, 877 (E.D. Mich. 2009); *Miller v. Gen. Motors, LLC*, No. 17-cv-14032, 2018 WL 2740240, at *6 (E.D. Mich. June 7, 2018); *Roe v. Ford Motor Co.*, No. 2:18-CV-12528-LJM-APP, 2019 WL 3564589, at *16 (E.D. Mich. Aug. 6, 2019).

## II.   PLAINTIFF DOES NOT PLEAD A VIABLE STATE LAW IMPLIED WARRANTY CLAIM.

The implied warranty of merchantability provides for a minimum level of quality and does not impose a general requirement that goods precisely fulfill the subjective expectations of the buyer. *See Rosenbaum v. Toyota Motor Sales, USA, Inc.*, No. 16-CV-12645, 2016 WL 9775018, at *2 (E.D. Mich. Oct. 21, 2016)

("Merchantable is not a synonym for perfect. The warranty of merchantability is that goods are of average quality in the industry" and fit for their "ordinary purpose."). In cases involving vehicle sales, a plaintiff must plead, and ultimately prove, that the "vehicle manifests a defect that is so basic it renders the vehicle unfit for its ordinary purpose of providing transportation." *In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.*, 966 F. Supp. 1525, 1533 (E.D. Mo. 1997).

Here, plaintiff makes only a conclusory allegation that his alleged transmission issues render his vehicle "not fit for the ordinary purpose for which cars are used." Compl. ¶ 147. But plaintiff alleges only inconvenience and discomfort arising from engine shuddering and hesitation in shifting (*id.* ¶ 33), and does not allege that he actually experienced a single safety incident or ever stopped driving his vehicle. *See Hadley v. Chrysler Grp., LLC*, 624 F. App'x 374, 379 (6th Cir. 2015) ("[a]t no point other than the half-day the dealer spent 'diagnosing' their airbag light do the plaintiffs allege they were unable to use their vehicle"); *see also Weddle v. Smith & Nephew, Inc.*, No. 14-C-09549, 2016 WL 1407634, at *5 (N.D. Ill. April 11, 2016) (rejecting conclusory allegations that product was "unreasonably dangerous and defective").

Plaintiff's claim also fails because, as noted in section I.B above, he does not allege that he presented his vehicle for repair during the warranty period. Under Michigan law, a manufacturer may limit the duration of any implied warranty to

10

the duration of the express warranty as long as the "language of the disclaimer . . . mention[s] 'merchantability' and [is] 'conspicuous.'" *Vanalstine v. Land O'Lakes Purina Feeds, LLC*, 929 N.W.2d 789, 795 (Mich. Ct. App. 2018) (citing MICH. COMP. LAWS § 440.2316(2)). Here, GM's Limited Warranty has conspicuous language stating that, "[a]ny implied warranty of merchantability or fitness for a particular purpose applicable to this vehicle is limited in duration to the duration of this written warranty." Compl., Ex. E (ECF No. 1-6 at 19).

## III.   PLAINTIFF DOES NOT PLEAD A VIABLE CLAIM UNDER THE MAGNUSON-MOSS WARRANTY ACT.

Plaintiff asserts a "nationwide" claim for violation of the MMWA based on the alleged breach of GM's New Vehicle Limited Warranty and implied warranties (Compl. ¶¶ 72-85). An MMWA claim is "directly depend[e]nt upon a sustainable claim for breach of warranty" under state law. *Zanger v. Gulf Stream Coach, Inc.*, No. 05-72300, 2006 WL 1494952, at *7 (E.D. Mich. May 25, 2006) ("[I]f there [is] no actionable [state law] warranty claim, there can be no violation of the Magnuson–Moss Act."); *Temple v. Fleetwood Enters., Inc.*, 133 F. App'x 254, 268 (6th Cir. 2005); *Nardizzi*, No. CV 19-03665-CJC, Dkt. 31 at 7. Because plaintiff's state law express and implied warranty claims cannot proceed, the MMWA claim (Count 1) also fails.

## IV.   PLAINTIFF'S FRAUDULENT CONCEALMENT CLAIM FAILS ON MULTIPLE GROUNDS.

To state a viable fraudulent concealment claim, plaintiff must allege that: (i) GM omitted a material fact from a specific communication; (ii) plaintiff relied on the omission to his detriment; and (iii) GM had a duty to disclose the material fact. *See MacDonald v. Thomas M. Cooley Law Sch.*, 724 F.3d 654, 665 (6th Cir. 2013). Plaintiff must also allege this claim with the particularity required by Rule 9(b). Plaintiff does not meet these requirements.

### A.   Plaintiff Does Not Satisfy Rule 9(b).

Plaintiff alleges only that he reviewed unspecified "GM[] advertising" at an unspecified time. Compl. ¶ 14. Far from meeting the heightened pleading standard of Rule 9(b), plaintiff does not even satisfy the lower Rule 8 pleading standard because he does not identify *any* GM communication that he relied on, when he relied on it, or how it was misleading. These are all essential facts, and without any of them, plaintiff's claims cannot stand.

Without details on "'the who, what, when, where, and how' of [any] alleged omission," plaintiff's fraudulent concealment claims should be dismissed. *Republic*, 683 F.3d at 256; *see also Williams v. Scottrade, Inc.*, No. 06-10677, 2006 WL 2077588, at *7 (E.D. Mich. July 24, 2006) (allegations of "generally misrepresenting in "advertisements, marketing materials, and sales message" deemed insufficient).

Plaintiff also cannot state an omission-based claim because he does not plead "precisely what was omitted." *Republic,* 683 F.3d at 256. Plaintiff does not allege any specific component of his transmission is defective. Instead, he pleads a wide range of general transmission symptoms (*see* fn.2 and fn.3 at  4, above), which cannot serve as the basis of omission-based consumer fraud claims. Courts routinely dismiss consumer fraud claims where, as here, a plaintiff fails to adequately allege "the contours of the alleged defect" that the defendant was required to disclose. *See Herrera v. Volkswagen Grp. of Am., Inc.*, No. 16-00364-CJC, 2016 WL 10000085, at *4 (C.D. Cal. Sept. 9, 2016); *DeCoteau v. FCA US LLC*, No. 2:15-cv-00020-MCE-EFB, 2015 WL 6951296, at *3 (E.D. Cal. Nov. 10, 2015) (plaintiffs "failed to allege how a specific defect within the transmission caused the 'symptoms' Plaintiffs purportedly experienced."); *McQueen v. BMW of N. Am., LLC*, No. 12-6674, 2013 WL 4607353, at *7 (D.N.J. Aug. 29, 2013) ("There is no identification as to what precisely the defect is, other than a conclusory allegation that the transmission system is defective.'); *Callaghan v. BMW of N. Am., LLC*, No. 13-cv-04794-JD, 2014 WL 6629254, at *3 (N.D. Cal. Nov. 21, 2014) ("[t]ransmissions can fail for a myriad of different reasons").

### B.    Plaintiff Does Not Allege a Duty to Disclose for GM.

#### 1.    Plaintiff Cannot Allege a Duty to Disclose.

Michigan law does not impose a duty to disclose on remote manufacturers

13

for individual consumers who, like plaintiff, purchased their products through independent retailers or dealerships. *Matanky*, 370 F. Supp. 3d at 794. A duty arises only if a plaintiff "made a specific inquiry" to the manufacturer about the vehicle's capabilities. *See id*. Plaintiff does not allege any communications with GM, much less any "specific inquiry." *See id*; *see also In re Gen. Motors LLC Ignition Switch Litig.*, 257 F. Supp. 3d 372, 424 (S.D.N.Y. 2017) (Michigan law) (The "failure to inquire . . . dooms the [fraudulent concealment] claim.").

## 2. Plaintiff Does Not Allege GM Had Knowledge of a Defect at the Time of Sale.

To plead a duty to disclose, plaintiff must sufficiently allege that GM was aware of a defect at the time of sale. *See Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 754 n.10 (E.D. Mich. 2017); *Storey v. Attends Healthcare Prods., Inc.*, No. 15-cv-13577, 2016 WL 3125210, at *10 (E.D. Mich. June 3, 2016) (defendants "cannot be faulted for failing to reveal material 'facts' that did not exist").

Plaintiff's allegations do not establish that GM knew of a specific defect in his vehicles at the time of sale, which is a core element of his claim. To suggest otherwise, plaintiff speculates that GM knew of a "Transmission Defect" in all Class Vehicles based on (i) NHTSA complaints, (ii) consumer complaints on third-party websites, and (iii) service bulletins to GM authorized dealerships.

### a. NHTSA Complaints

Plaintiff cites 12 NHTSA complaints about various transmission issues in

various GM vehicles. Compl. ¶ 38, Ex. F & G. These complaints contain generalized transmission issues with varied symptoms and no common cause.[8] These NHTSA complaints cannot raise an inference of knowledge because they do not describe a single identifiable defect. *See Victorino v. FCA US LLC*, No. 16-cv-1617-GPC, 2018 WL 1083395, at *8 (S.D. Cal. Feb. 27, 2018) ("When addressing a defendant's pre-sale knowledge, courts have held that the defendant must have knowledge of *the specific defect alleged*, not a general defect.") (emphasis added); *see also Sloan*, 2017 WL 3283998, at *7. Further, none of these complaints described a defect in a Cadillac Escalade—the vehicle that plaintiff purchased. *See Stevenson v. Mazda Motor of Am., Inc.*, No. 14-5250-FLW-DEA, 2015 WL 3487756, at *6 (D.N.J. June 2, 2015) ("consumers cannot rely on general allegations that a manufacturer had received complaints about similar makes and models of vehicles.").

Most of these generalized complaints (10 of 12) were also submitted after plaintiff had already purchased his two-year-old used truck in August 2017. Compl. ¶¶ 14, 38. These complaints cannot establish GM had knowledge of any

---

[8] *See id.* ¶ 38(1) (describing, among other symptoms, "unexpected acceleration," a vehicle that "shifts fine at HWY speeds," and a transmission that "jumps into low gear when slowing down"); *see also id.* ¶ 38(2) (describing, among other symptoms, "an abnormal noise when shifting gears," a "hard shift when accelerating and decelerating," "vibration issues," and a truck that "constantly hestitates, hang[s] gears, [and] bucks").

transmission defect at the time of purchase, and the Court should not consider them. *See Beck*, 273 F. Supp. 3d at 753-54.[9]

Plaintiff alleges no facts to suggest that this statistically insignificant number of complaints out of "hundreds of thousands" of Class Vehicles sold (Compl. ¶ 29, 61) would constitute the "unusually high number of complaints" needed to provide GM with sufficient notice of a defect in all Class Vehicles. *See Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1026 (9th Cir. 2017); see also *Roe*, 2019 WL 3564589, at *7 (rejecting allegations about 14 NHTSA complaints).[10]

b.   **Third-Party Website Complaints**

Plaintiff also tries to raise an inference of knowledge based on 9 consumer complaints from six different third-party websites between May 2015 and May 2019, and asserts that "[u]pon information and belief, GM is on notice of these complaints." Compl. ¶¶ 39-40; *id.*, Ex. B-D & H-O. This statistically insignificant number of complaints addresses disparate symptoms and different transmission-related issues in different makes and model years with different transmissions. *See*

---

[9] *See also Grodzitsky v. Am. Honda Motor Co.*, No. 2:12-cv-1142-SVW-PLA, 2013 WL 690822, at *7 (C.D. Cal. Feb. 19, 2013) (no "plausible inference of knowledge based on their allegation that Defendant received customer complaints after the sales of the vehicles in question."); *Stevenson*, 2015 WL 3487756, at *7.

[10] *See also Sloan*, 2017 WL 3283998, at *7 ("81 complaints posted over the course of seven years . . . do not show GM's knowledge of the alleged defect"); *McQueen*, 2013 WL 4607353, at *7 ("Nor can such a low rate of reports constitute a plausible allegation that BMW must have known of the alleged defect.").

*Stevenson*, 2015 WL 3487756, at *6.

Plaintiff does not allege *facts* to suggest that GM monitored these websites or saw any of these posts. *See Wozniak,* 2019 WL 108845, at *3.[11] This statistically insignificant number of complaints from third-party websites could not support GM's knowledge of a design defect impacting several "hundreds of thousands" of Class Vehicles (Compl. ¶ 29, 61). *See Roe*, 2019 WL 3564589, at *7 (rejecting reliance on statistically insignificant number of consumer complaints). Far larger numbers of complaints posted directly on a *manufacturer's own website* have been found insufficient because they "merely establish the fact that some consumers were complaining." *See Berenblat v. Apple, Inc.*, Nos. 08-4969 *et al.*, 2010 WL 1460297, at *9 (N.D. Cal. Apr. 9, 2010) (finding 350 complaints posted to defendant's own website insufficient to show knowledge of a defect); *Nardizzi*, No. CV 19-03665-CJC, Dkt. 31 at 9-10 ("A handful of online complaints, standing alone, does not plausibly establish that the 'amassed weight' of consumer complaints provided GM with pre-purchase knowledge of the defect.").[12]

---

[11] *See also Resnick v. Hyundai Motor Am., Inc.*, No. 16-00593, 2016 WL 9455016, at *13, *15 (C.D. Cal. Nov. 14, 2016) (plaintiffs failed to present "facts indicating that Hyundai monitored these websites or was aware of these complaints."); *Oliver v. Funai Corp.*, No. 14-04532, 2015 WL 9304541, at *4 (D.N.J. Dec. 21, 2015).

[12] *See also Oliver*, 2015 WL 9304541, at *4 ("imputing knowledge" based on "internet posting[s] would mean that virtually every consumer product company would be subject to fraud claims and extensive discovery" because plaintiffs would

(continued…)

c.     **Technical Service Bulletins**

Plaintiff alleges that GM knew of the alleged transmission defect because, between October 2015 and May 2019, GM issued routine service bulletins informing dealership service personnel that some customers "might complain" about a broad spectrum of issues affecting small minorities of vehicles. Compl. ¶¶ 41-56; *id.*, Ex. P-V. These bulletins describe nearly a dozen different issues, with different symptoms, causes, and remedies, and involve different subsets of Class Vehicles, as well as vehicles with entirely different transmissions. These bulletins address issues ranging from "delayed engagement" to "harsh engagement" to a "shudder feeling" to "harsh shifting" at various speeds. *Id.* They identify causes ranging from "adaptive functions" in transmissions (*id.*, Ex. S, U & V); torque converters (*id.*, Ex. P-R); Clutch Control Solenoids and valve bodies (*id.*, Ex. V); transmission control module calibrations (*id.*, Ex. S & U); and vehicle software (*id.*, Ex. U). These bulletins do not suggest the existence of any single, common defect in all Class Vehicles.

These bulletins inform dealerships of *potential* customer complaints; they do

_____

(continued…)

need only allege "that a product broke once and that someone had complained about it on the internet" (internal quotation marks omitted)); *Resnick*, 2016 WL 9455016, at *13 ("complaints merely establish that several customers had issues with their specific vehicles, not that there was a widespread defect").

not establish that any issue existed, or that any repair was necessary, in *all* Class Vehicles.[13] *See Alban*, 2011 WL 900114, *11-12 (TSB acknowledged issue only that issue "*may* be noticed" and did not establish that "all or substantially all" class vehicles were affected (emphasis added)). To the contrary, these bulletins inform dealership personnel to conduct specified remedies (*e.g.*, replace the torque converter, flush the cooler lines, install a new filter, or clean the pan and magnet) *only* if a customer experienced a specified issue. *See, e.g.*, Compl. ¶¶ 46-48.

## V.   PLAINTIFF DOES NOT STATE A VIABLE MCPA CLAIM.

Michigan's consumer protection statute exempts motor vehicle sales, and therefore the allegations under the MCPA fail as a matter of law. Michigan courts, including this Court, hold that motor vehicle sales are exempt from the MCPA because they are "specifically authorized under" the Michigan Vehicle code. *Jimenez v. Ford Motor Credit Co.*, Dkt. No. 322909, 2015 WL 9318913, at *6-7 (Mich. Ct. App. Dec. 22, 2015); *Chaudoin v. Thor Motor Coach, Inc.*, No. 15-13871, 2017 WL 3485803, at *24 (E.D. Mich. Aug. 15, 2017) (recreational vehicle sale exempt); *Rosenbaum*, 2016 WL 9775018, at *3 (advertising claims for Prius

---

[13] Courts recognize that these bulletins "are generally the result of consumer complaints that cause a manufacturer to investigate, diagnose, and remedy a defect in one of its products," and that "[a]ccepting these advisories as a basis for consumer fraud claims may discourage manufacturers from responding to their customers in the first place." *Alban v. BMW of N. Am., LLC*, No. 09-5398, 2011 WL 900114, at *12 (D.N.J. Mar. 15, 2011).

and "miles-per-gallon estimate" exempt), *aff'd* , 708 F. App'x 242 (6th Cir. 2017); *Matanky*, 370 F. Supp. 3d at 800.

In any event, for the reasons described in Section IV above, plaintiff's MCPA claim also does not adequately plead deceptive advertising, reliance, causation, or injury as required by Rule 9(b), nor does it allege GM's knowledge of a defect at the time of sale. *See Rosipko v. FCA US, LLC*, No. 15-11030, 2015 WL 8007649, at *4 (E.D. Mich. Dec. 7, 2015) (applying Rule 9(b) to "affirmative misrepresentations and alleged omissions" premised on Michigan Consumer Protection Act); *Williams*, 2006 WL 2077588, at *7.

## VI. PLAINTIFF DOES NOT PLEAD A VIABLE UNJUST ENRICHMENT CLAIM.

Plaintiff's unjust enrichment claim (Count 3) fails because he alleges the existence of a written warranty covering his vehicles (Compl. ¶ 31). *Solo v. UPS Co.*, 819 F.3d 788, 796 (6th Cir. 2016); *see also Power Process Eng'g Co., Inc. v. ValvTechnologies, Inc.*, No. 16-CV-11524, 2016 WL 7100504, at *4 (E.D. Mich. Dec. 6, 2016); *Matanky*, 370 F. Supp. 3d at 803.

It is also well settled that unjust enrichment is an equitable remedy and is not available where, as here, plaintiff has an adequate legal remedy. "The plaintiff does not have to actually recover under the legal theory for the equitable claim to be barred. Instead, the opportunity . . . to recover under a legal theory is sufficient to bar the equitable claim." *Duffie v. The Michigan Grp., Inc.*, No. 14-CV-14148,

2016 WL 28987, at *17 (E.D. Mich. Jan. 4, 2016).

Finally, an unjust enrichment claim will not survive where, as here, the case involves a consumer plaintiff and a remote manufacturer. *See Storey*, 2016 WL 3125210, at *13; *see also Schechner*, 237 F. Supp. 3d at 618.

## VII.  PLAINTIFF DOES NOT PLEAD A VIABLE DECLARATORY JUDGMENT CLAIM.

Plaintiff's Declaratory Judgment Act claim (Count 2) should be dismissed because it is duplicative of his other claims seeking the same relief over the same allegations. Declaratory judgment is unnecessary and inappropriate when a plaintiff has an adequate, alternative remedy in another cause of action. *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 989 F. Supp. 838, 841 (E.D. Mich. 1997), *aff'd*, 176 F.3d 904 (6th Cir. 1999) ("the declaratory judgment claim is unnecessary given [plaintiff]'s companion breach of contract claim"); *Delta Turner, Ltd. v. Grand Rapids--Kent Cty. Convention/Arena Auth.*, 600 F. Supp. 2d 920, 939 (W.D. Mich. 2009) (dismissing declaratory judgment claim that sought "relief duplicative in part to that sought in plaintiff's antitrust claim"). Plaintiff's declaratory judgment claim seeks the same relief as his warranty claims. *See City of Wyoming v. Procter & Gamble Co.*, 210 F. Supp. 3d 1137, 1162 (D. Minn. 2016) (dismissing claim "because it is a duplicative express warranty claim and not an independent Declaratory Judgment Act action"); *Marshall v. Hyundai Motor*

21

*Am.*, 51 F. Supp. 3d 451, 472 (S.D.N.Y. 2014) (dismissing claim seeking 'the same remedy" sought "in Plaintiffs' claim for breach of express warranty").

## VIII.  PLAINTIFF'S NATIONWIDE CLASS ALLEGATIONS SHOULD BE STRICKEN.

### A.    Plaintiff Lacks Standing For A Nationwide Class.

The plaintiff's nationwide class allegations (Counts 1, 2, 3 & 7) should be stricken for the independent reason that there is no named plaintiff from any of the other 49 states, and the sole Michigan named plaintiff cannot represent putative class members from other states (even if he could meet other requirements for a class action, which he cannot). *See McKee*, 376 F. Supp. 3d at 755 ("Plaintiff here does not allege injuries in states other than [Michigan] or base his claims on the application of other states' laws. Plaintiff therefore lacks standing to bring claims on behalf of a nationwide class."); *Wozniak*, 2019 WL 108845, at *1; *Matanky*, 370 F. Supp. 3d at 788; *In re Packaged Ice Antitrust Litig.*, 779 F. Supp. 2d 642, 657-58 (E.D. Mich. 2011) (dismissing claims under laws of 26 states in which no named plaintiff resided or purchased the relevant product).[14]

### B.    Plaintiff's Nationwide MMWA and Unjust Enrichment Claims Cannot Meet Rule 23 Requirements Because They Would Be Governed by the Disparate Laws of Fifty States.

Claims for a "nationwide" class under the MMWA are facially untenable

---

[14] *See also Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1175 (N.D. Cal. 2017) (dismissing nationwide MMWA claim for lack of standing).

because those claims require viable underlying state-law warranty claims (*see Rosipko*, 2015 WL 8007649, at \*5). The variation in the law of 50 states would defeat Rule 23§ commonality, predominance, and superiority requirements. Variations in state warranty law include: "(1) whether plaintiffs must demonstrate reliance, (2) whether plaintiffs must provide notice of breach, (3) whether there must be privity of contract, (4) whether plaintiffs may recover for unmanifested vehicle defects, (5) whether merchantability may be presumed and (6) whether warranty protections extend to used vehicles." *Cole v. Gen. Motors Corp.*, 484 F.3d 717, 726 (5th Cir. 2007) (denying nationwide class certification); *Rasnic v. FCA US LLC*, No. 17-2064-KHV, 2017 WL 6406880, at \*10 (D. Kan. Dec. 15, 2017) (striking class allegations because "[i]f a nationwide class seeks relief under the MMWA . . . , the Court would potentially have to apply different state laws to each respective plaintiff's claim. Differences in state laws governing each claim would create manageability concerns prohibiting class certification").

Likewise, there are differences between state law elements of unjust enrichment and its availability as a remedy, including whether "states preclude such claims when an adequate legal remedy is available" or where there is an enforceable contract. *Mazza v. Am. Honda Motor Co.,* 666 F.3d 581, 591 (9th Cir. 2012) ("The elements necessary to establish a claim for unjust enrichment also vary materially from state to state"); *Thompson v. Jiffy Lube Int'l, Inc.*, 250 F.R.D.

607, 626 (D. Kan. 2008) ("Because of such variations, federal courts have generally refused to certify a nationwide class" for unjust enrichment claims).

Under Sixth Circuit precedent, courts should resolve class certification questions on a pre-answer motion to strike basis where, as here, the asserted class is facially improper and no amount of discovery would change the central defect. *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 947 (6th Cir. 2011) (striking nationwide class because "the consumer-protection laws of the State where each injury took place would govern these claims"). "If more than a few of the laws of the fifty states differ . . . the district judge would face an impossible task of instructing a jury on the relevant law." *Id.* at 948-49 (quoting *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996)).[15] Courts generally strike nationwide MMWA claims for this precise reason.[16]

---

[15] *See also Loreto v. Procter & Gamble Co.*, 515 F. App'x 576, 582 (6th Cir. 2013) (in view of *Pilgrim* "reinstating [plaintiffs' class claims under the laws of 49 states] would be futile"); *Oom v. Michaels Cos.*, No. 1:16-cv-257, 2017 WL 3048540, at *7 (W.D. Mich. July 19, 2017) (striking proposed nationwide class because "applicable state laws would vary substantially"); *Boyer v. Diversified Consultants, Inc.*, 306 F.R.D. 536, 538 (E.D. Mich. 2015).

[16] *See, e.g.*, *Oom*, 2017 WL 3048540, at *7 (striking nationwide MMWA claim); *Rasnic*, No. 17-2064-KHV, 2017 WL 6406880, at *10 (striking class allegations because "[d]ifferences in state laws governing each [MMWA] claim would create manageability concerns"); *Miles v. Am. Honda Motor Co.*, No. 17-c-4423, 2017 WL 4742193, at *5 (N.D. Ill. Oct. 19, 2017) (striking nationwide MMWA allegations and noting that "[a]pplying the warranty . . . laws of 50 different states, or even the 4 states that the name plaintiffs represent, is unmanageable on a class-

(continued…)

## <u>CONCLUSION</u>

GM requests dismissal of all of plaintiff's claims with prejudice or, if any claims proceed, an order striking plaintiff's nationwide class allegations.

Dated: September 10, 2019                    Respectfully submitted,

/s/ Kathleen Taylor Sooy

Kathleen Taylor Sooy
Jerome A. Murphy
Jared A. Levine
CROWELL & MORING LLP
1001 Pennsylvania Avenue, N.W.
Washington, DC 20004
Telephone: (202) 624-2500
Fax: (202) 628-5116
ksooy@crowell.com
jmurphy@crowell.com
jalevine@crowell.com

BUSH SEYFERTH & PAIGE PLLC
Stephanie A. Douglas
3001 W. Big Beaver Road
Suite 600
Troy, MI 48084
Telephone: (248) 822-7806
Fax: (248) 822-7806
douglas@bsplaw.com

Counsel for General Motors LLC

---

(continued…)

wide basis"); *see also Oscar v. BMW of N. Am., LLC*, 274 F.R.D. 498, 509 (S.D.N.Y. 2011) (refusing to certify "nationwide class[] under the MMWA" because "differences in state laws [would] predominate over common questions").

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on September 10, 2019 the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record.

<u>/s/ Kathleen Taylor Sooy</u>
Kathleen Taylor Sooy

*Counsel for General Motors LLC*